**Nos. 23-2166, 23-2167, 23-2185**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

WE THE PATRIOTS USA, INC., ZACHARY FORT, RANDY DONK, et al.,

Plaintiffs-Appellants,

v.

MICHELLE LUJAN GRISHAM, in her official capacity, et al.,

Defendants-Appellees.

On Appeal from the United States District Court, District of New Mexico
The Honorable David Herrera Urias, District Judge
District Court Case Nos. 1:23-cv-773, 1:23-cv-778, 1:23-cv-772

**PLAINTIFFS-APPELLANTS' CORRECTED
CONSOLIDATED APPENDIX**

**VOLUME 2 of 3**

Cameron Lee Atkinson
ATKINSON LAW, LLC
122 Litchfield Road
P.O. Box 340 St. 2
Harwinton, CT 06791
203-677-0782
catkinson@atkinsonlawfirm.com

*Attorney for Plaintiffs We the Patriots USA, Inc. et al.*

Jordon P. George
ARAGON MOSS GEORGE JENKINS, LLP
2201 Menaul Blvd NE
Albuquerque, NM 87107
505-872-3022
jordon@amglaw.com

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave NW
Washington, D.C. 20036
202-220-9600
dthompson@cooperkirk.com

*Attorneys for Plaintiffs Fort et al.*

Robert J. Olson
WILLIAM J. OLSON, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
(703) 356-5070
wjo@mindspring.com

Stephen Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

*Attorneys for Plaintiffs Donk et al.*

# TABLE OF CONTENTS[1]

## Volume 2 of 3

District Court Docket Sheet, Case No. 1:23-cv-772-DHU, *Donk v. Grisham* (D.N.M.) ............................................................................................App. 1

Document 1, Complaint (Sept. 9, 2023) ...........................................................App. 8

Document 1-3, Declaration of Randy Donk (Sept. 9, 2023) .........................App. 24

Document 2, TRO Memorandum of Points & Authorities (Sept. 9, 2023)..........................................................................................App. 27

Document 26, Supplemental Brief in Support of Motion for a Preliminary Injunction (Oct. 6, 2023) .......................................................................App. 37

Document 26-1, Supplemental Declaration of Randy Donk (Oct. 6, 2023)...........................................................................................App. 44

---

[1] To mitigate confusion given the three separate district court dockets, and at the request of the clerk's office, Plaintiffs hereby submit an appendix in three volumes, each of which corresponds to one of the individual lower court cases. To the extent there are repeat documents on each of the three dockets, only one copy from the lead case, *We the Patriots USA, Inc. v. Grisham*, is included in Volume 1.

CONSOL

## U.S. District Court
## United States District Court - District of New Mexico (Albuquerque)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00772-DHU-LF

Donk et al v. Grisham et al

Assigned to: District Judge David H. Urias

Referred to: Magistrate Judge Laura Fashing

Lead case: 1:23-cv-00773-DHU-LF

Member case: (View Member Case)

Cause: 42:1983 Civil Rights Act

Date Filed: 09/09/2023

Jury Demand: None

Nature of Suit: 950 Constitutional - State Statute

Jurisdiction: Federal Question

**Plaintiff**

**Randy Donk**                         represented by  **Anthony Roman Napolitano**
                                                        Bergin, Frakes, Smalley & Oberholtzer
                                                        PLLC
                                                        4343 East Camelback Road
                                                        Ste 210
                                                        Phoenix, AZ 85018
                                                        602-848-5449
                                                        Email: anapolitano@bfsolaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Stephen Stamboulieh**
                                                        Stamboulieh Law, PLLC
                                                        P.O. Box 428
                                                        Olive Branch, MS 38654
                                                        601-852-3440
                                                        Email: stephen@sdslaw.us
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mark J Caruso**
                                                        Caruso Law Offices, PC
                                                        4302 Carlisle Blvd, NE
                                                        Albuquerque, NM 87107
                                                        (505) 883-5000
                                                        Fax: 505-883-5012
                                                        Email: mark@carusolaw.com
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gun Owners of America, Inc.**        represented by  **Anthony Roman Napolitano**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

App. 1

**Stephen Stamboulieh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark J Caruso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gun Owners Foundation**    represented by    **Anthony Roman Napolitano**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen Stamboulieh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark J Caruso**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Michelle Lujan Grisham**    represented by    **Holly Agajanian**
*in her official capacity as the Governor of*                Office of the Governor
*New Mexico*                                                490 Old Santa Fe Trail
                                                           Ste. 400
                                                           Santa Fe, NM 87501
                                                           505-476-2210
                                                           Email: holly.agajanian@exec.nm.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Patrick M. Allen**    represented by    **Holly Agajanian**
*in his official capacity as the Cabinet*                (See above for address)
*Secretary of the New Mexico Department of*               *LEAD ATTORNEY*
*Health*                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Jason R. Bowie**    represented by    **Holly Agajanian**
*in his official capacity as the Cabinet*                (See above for address)
*Secretary of the New Mexico Department of*               *LEAD ATTORNEY*
*Public Safety*                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Troy W. Weisler**    represented by    **Holly Agajanian**
*in his official capacity as the Chief of the*            (See above for address)
*New Mexico State Police*

**App. 2**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2023 | 1 | COMPLAINT against Patrick M. Allen, Jason R. Bowie, Michelle Lujan Grisham, Troy W. Weisler ( Filing Fee - Online Payment), filed by RANDY DONK, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC.. (Attachments: # 1 Exhibit Governor EO, # 2 Exhibit Public Health Order, # 3 Exhibit Declaration of Randy Donk, # 4 Exhibit Declaration of Erich Pratt, # 5 Civil Cover Sheet, # 6 Summons on Gov, # 7 Summons on Jason Bowie, # 8 Summons on Patrick Allen, # 9 Summons on Weisler) (Caruso, Mark) (Entered: 09/09/2023) |
| 09/09/2023 | | Filing and Administrative Fees Received: $ 402 receipt number ANMDC-8997776 re 1 Complaint,, filed by RANDY DONK, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC. (Payment made via Pay.gov)(Caruso, Mark) (Entered: 09/09/2023) |
| 09/09/2023 | 2 | MOTION for Temporary Restraining Order by RANDY DONK, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC.. (Attachments: # 1 TRO Cover Page) (Caruso, Mark) (Entered: 09/09/2023) |
| 09/11/2023 | | United States District Judge David H. Urias and United States Magistrate Judge Laura Fashing assigned. (dr) (Entered: 09/11/2023) |
| 09/11/2023 | 3 | Corporate Disclosure Statement by Gun Owners of America, Inc. (Caruso, Mark) (Entered: 09/11/2023) |
| 09/11/2023 | 4 | Corporate Disclosure Statement by Gun Owners Foundation (Caruso, Mark) (Entered: 09/11/2023) |
| 09/11/2023 | 5 | NOTICE of Hearing on Motion 2 MOTION for Temporary Restraining Order :<br><br>Motion Hearing set for 9/12/2023 at 11:00 AM in Albuquerque - 420 Mimbres Courtroom before District Judge David H. Urias. (jmg)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/11/2023) |
| 09/11/2023 | 6 | MINUTE ORDER<br><br>**VACATING** the hearing on Temporary Restraining Order set for 9/12/2023. The hearing will be reset at a later date.<br><br>THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.<br>(jmg) (Entered: 09/11/2023) |
| 09/12/2023 | 7 | NOTICE of Hearing on Motion 2 MOTION for Temporary Restraining Order :<br><br>Motion Hearing set for 9/13/2023 at 01:00 PM in Albuquerque - 420 Mimbres Courtroom before District Judge David H. Urias.<br>(jmg)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/12/2023) |
| 09/12/2023 | 8 | NOTICE of Appearance by Stephen Stamboulieh on behalf of Randy Donk, Gun Owners Foundation, Gun Owners of America, Inc. (Stamboulieh, Stephen) (Entered: 09/12/2023) |
| 09/12/2023 | 9 | NOTICE of Appearance by Anthony Roman Napolitano on behalf of Gun Owners of America, Inc. (Napolitano, Anthony) (Entered: 09/12/2023) |

| 09/13/2023 | 10 | CERTIFICATE OF SERVICE by Randy Donk *Certificate of Service to Attorney General* (Caruso, Mark) (Entered: 09/13/2023) |
| 09/13/2023 | 11 | CERTIFICATE OF SERVICE by Randy Donk *Certificate of Service Notice of Hearing* (Caruso, Mark) (Entered: 09/13/2023) |
| 09/13/2023 | 12 | CERTIFICATE OF SERVICE by Randy Donk *Certificate of Service Complaint* (Caruso, Mark) (Entered: 09/13/2023) |
| 09/13/2023 | 13 | NOTICE OF PUBLIC ACCESS TO HEARING scheduled for 9/13/2023 at 1:00 PM: <br><br> AUDIO connection to this hearing can be accessed by following the link below and using the login information provided: <br><br> Click here to access public hearing. <br><br> USERNAME: audio <br><br> PASSWORD: 7AE9EC <br> (jmg) <br> [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/13/2023) |
| 09/13/2023 | 14 | TEMPORARY RESTRAINING ORDER by District Judge David H. Urias GRANTING 2 Motion for Temporary Restraining Order (jdf). Modified on 9/14/2023 (bc). (Entered: 09/13/2023) |
| 09/13/2023 | 15 | Clerk's Minutes for proceedings held before District Judge David H. Urias: Motion Hearing held on 9/13/2023 re 2 MOTION for Temporary Restraining Order filed by Gun Owners Foundation, Gun Owners of America, Inc., Randy Donk. (Court Reporter C. McAlister) (fs) (Entered: 09/14/2023) |
| 09/15/2023 | 16 | NOTICE of Hearing on Motion for Preliminary Injunction set for 10/3/2023 at 10:00 AM in Albuquerque - 420 Mimbres Courtroom before District Judge David H. Urias. <br><br> [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.](jdf) (Entered: 09/15/2023) |
| 09/15/2023 |  | Set Hearing as to Motion Hearing set for 10/3/2023 at 10:00 AM in Albuquerque - 420 Mimbres Courtroom before District Judge David H. Urias. (arp) (Entered: 09/18/2023) |
| 09/18/2023 | 17 | NOTICE of Appearance by Anthony Roman Napolitano on behalf of Randy Donk, Gun Owners Foundation, Gun Owners of America, Inc. (Napolitano, Anthony) (Entered: 09/18/2023) |
| 09/22/2023 | 18 | TRANSCRIPT of Proceedings held on September 13, 2023, before District Judge David H. Urias. Court Reporter/Transcriber Carmela McAlister, Telephone number 505-348-2094. Transcript may be viewed at the Clerk's Office public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **PLEASE TAKE NOTICE that each party now has seven (7) calendar days to file a Notice of Intent to Request Redaction of any personal identifiers from this transcript. If no notice is filed during this seven-day period, the court will assume that redaction of personal data is not necessary and will make the transcript electronically available, as is, to the public after 90 days. For additional guidance, PLEASE REVIEW the** |

App. 4

| | | complete policy, located in the CM/ECF Administrative Procedures Manual at https://www.nmd.uscourts.gov. |
|---|---|---|
| | | Notice of Intent to Request Redaction set for 9/29/2023. Redaction Request due 10/13/2023. Redacted Transcript Deadline set for 10/23/2023. Release of Transcript Restriction set for 12/21/2023.(cm) (Entered: 09/22/2023) |
| 10/02/2023 | 19 | RESPONSE in Opposition re 2 MOTION for Temporary Restraining Order filed by Patrick M. Allen, Jason R. Bowie, Michelle Lujan Grisham, Troy W. Weisler. (Attachments: # 1 Exhibit A) (Agajanian, Holly) (Entered: 10/02/2023) |
| 10/03/2023 | 20 | NOTICE OF PUBLIC ACCESS TO HEARING scheduled for 10/3/2023 at 10:00 AM:<br><br>AUDIO connection to this hearing can be accessed by following the link below and using the login information provided:<br><br>Click here to access public hearing.<br><br>USERNAME: audio<br><br>PASSWORD: 07FE9C<br>(jmg)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/03/2023) |
| 10/03/2023 | 21 | NOTICE of Appearance by Holly Agajanian on behalf of All Defendants (Agajanian, Holly) (Entered: 10/03/2023) |
| 10/03/2023 | | Summons Issued as to All Defendants. (bc) (Entered: 10/03/2023) |
| 10/03/2023 | 22 | Clerk's Minutes for proceedings held before District Judge David H. Urias: Preliminary Injunction Hearing held on 10/3/2023. (Court Reporter C. McAlister) (fs) (Entered: 10/03/2023) |
| 10/04/2023 | 23 | ORDER by District Judge David H. Urias:<br><br>DENYING Plaintiffs Motion for Preliminary Injunction as to Defendants Public Health Order dated September 8, 2023 (Original PHO) on mootness grounds;<br><br>Extending Temporary Restraining Order as to firearms restrictions in public parks until October 11, 2023;<br><br>The Court takes Plaintiffs request for a preliminary injunction as to the Amended Public Health Order issued September 15, 2023, under advisement. (CRG)<br><br>THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (Entered: 10/04/2023) |
| 10/05/2023 | 24 | NOTICE OF HEARING WITH VIDEO STREAMING: Status Conference set for 10/18/2023 at 11:00 AM Remote via Zoom before Magistrate Judge Laura Fashing. (cda)<br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely; The Zoom ID and Passcode will be docketed separately and available to the parties but not the public.<br><br>2. Participants should connect to the proceeding 15 minutes prior its scheduled start time to |

allow time for trouble-shooting of any connectivity issues.

3. To ensure the record is of the best quality participants are encouraged to utilize a headset to reduce static and background noise; if not using a headset participants must ensure the audio feed at their location is muted when not speaking.

*** REMINDER: Recording or broadcasting of this hearing is prohibited. ***

This hearing will be available for remote viewing by video stream.
Please visit the Court's website at www.nmd.uscourts.gov for information and instructions to connect.
(Entered: 10/05/2023)

| 10/06/2023 | 26 | BRIEF *Supplemental Brief In Support of Preliminary Injunction as to the Amended Public Health Order Issued September 15, 2023* by Randy Donk, Gun Owners Foundation, Gun Owners of America, Inc. (Attachments: # 1 Exhibit Exhibit 1) (Napolitano, Anthony) (Entered: 10/06/2023) |
| 10/10/2023 | 27 | ORDER CONSOLIDATING CASES by District Judge David H. Urias. Cases: 23-CV-771, 23-CV-772, 23-CV-773, 23-CV-774, 23-CV-778, and 23-CV-839. All pleadings shall be filed under the lead case number 23-CV-773. (fs) (Entered: 10/10/2023) |
| 10/26/2023 | 28 | "FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. Gun Owners of America, Inc. served on 10/18/2023, answer due 11/8/2023. (Caruso, Mark) Modified on 10/27/2023 **NEED TO REFILE IN LEAD CASE 23cv771** (bap). (Entered: 10/26/2023) |
| 10/26/2023 | 29 | **DUPLICATE**SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/26/2023 (jjs). (Entered: 10/26/2023) |
| 10/26/2023 | 30 | 'FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/27/2023 ** NEED TO REFILE IN LEAD CASE 23cv771 ** (bap). (Entered: 10/26/2023) |
| 10/26/2023 | 31 | "FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/27/2023 ** NEED TO REFILE IN LEAD CASE 23cv771 **(bap). (Entered: 10/26/2023) |
| 10/26/2023 | 32 | "FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/27/2023 **NEED TO REFILE IN LEAD CASE 23cv771 ** (bap). (Entered: 10/26/2023) |
| 10/26/2023 | 33 | "FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/27/2023 **NEED TO REFILE IN LEAD CASE 23cv771 **(bap). (Entered: 10/26/2023) |
| 10/26/2023 | 34 | "FILED IN ERROR" SUMMONS Returned Executed by Gun Owners of America, Inc.. (Caruso, Mark) Modified on 10/27/2023 **NEED TO REFILE IN LEAD CASE 23cv771 ** (bap). (Entered: 10/26/2023) |

| PACER Service Center |
| Transaction Receipt |
| 01/30/2024 07:23:34 |

| PACER Login: | reception | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:23-cv-00772-DHU-LF |
| Billable Pages: | 5 | Cost: | 0.50 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RANDY DONK,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
GUN OWNERS OF AMERICA, INC.,⠀)
and GUN OWNERS FOUNDATION,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil Action No. _____
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MICHELLE LUJAN GRISHAM, in her⠀⠀)
official capacity as the Governor of⠀⠀⠀)
New Mexico, PATRICK M. ALLEN, in⠀⠀)
his official capacity as the Cabinet Secretary )
of the New Mexico Department of Health,⠀)
JASON R. BOWIE, in his official capacity⠀)
as the Cabinet Secretary of the New Mexico )
Department of Public Safety, and W. TROY )
WEISLER, in his official capacity as the⠀⠀)
Chief of the New Mexico State Police,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Defendants.⠀⠀⠀⠀⠀⠀⠀⠀⠀)
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Randy Donk, Gun Owners of America, Inc., and Gun Owners Foundation, by and through undersigned counsel, and allege as follows:

1.⠀⠀⠀Purporting to respond to recently declared "statewide public health emergencies" of "gun violence and drug abuse," New Mexico Governor Michelle Lujan Grisham and Department of Health Secretary Patrick M. Allen ("Defendants") have asserted the unilateral power to suspend constitutional rights and impose what is essentially martial law.  To that end, they have promulgated an executive order signed by the Governor on September 7, 2023, and thereafter a "public health emergency order" signed by the Secretary on September 8, 2023, that flatly eliminate the right to "bear arms" in public in various "cities or counties" within the State that meet a convoluted, multi-part test for levels of criminal activity.

2.      Aware that local authorities have publicly announced that they are unwilling to enforce this clearly unconstitutional edict, and have staunchly refused to participate in Defendants' scheme to deprive their constituents of their constitutional rights, Defendants have ordered the New Mexico State Police to act as a private army of stormtroopers to be sent *en masse* to enforce Defendants' open and notorious subversion of constitutional rights.

3.      There is no defense to Defendants' actions — legal, moral, or otherwise.  Their actions clearly and unambiguously violate the Second Amendment's protection of the right to "bear arms" that "shall not be infringed," and deprive law-abiding gun owners of their only means of self-defense from criminal attack while in public.  For that reason, this Court must end this unconstitutional charade before the train even leaves the station.

4.      To that end, Plaintiffs request an immediate Temporary Restraining Order be issued, on an emergency basis, followed by a preliminary and then permanent injunction, and also seek declaratory and other relief.  Moreover, because there is literally nothing that Defendants can offer as a legal defense to their blatant and egregious constitutional violations, Plaintiffs ask that a restraining order be issued *ex parte*, without any opportunity for Defendants to respond or be heard.

## I.      <u>PARTIES</u>

5.      Plaintiff Randy Donk is a natural person, a citizen of the United States and of the State of New Mexico, and resides in Bernalillo County, New Mexico.  He is a law-abiding person who currently possesses a valid New Mexico Concealed Handgun License ("CHL").  Plaintiff Donk carries a lawfully owned firearm for self-defense in public, both concealed and at times openly, on a daily basis.  Plaintiff Donk's daily activities take him throughout both Bernalillo County and the City of Albuquerque.  Plaintiff Donk will continue carrying his firearm in public throughout the City of Albuquerque and Bernalillo County, in spite of Defendants' unconstitutional edicts, placing

him at great risk of irreparable harm and even potential arrest and criminal prosecution (not to mention loss of his New Mexico CHL, seizure of his firearm, and further infringement of his right to "bear arms").  *See* Exhibit 3.

6.     Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners.  GOA has more than 2 million members and supporters across the country, including residents of the District of New Mexico and throughout the City of Albuquerque and Bernalillo County, many of whom lawfully carry firearms on a daily basis.  Many of these gun owners, like the individual Plaintiff, will be irreparably harmed by Defendants' blatantly unconstitutional attempt to unilaterally suspend the Second Amendment in public.  *See* Declaration of Erich Pratt, Exhibit 4.

7.     Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOF was formed in 1983 and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code.  GOF is supported by gun owners across the country and within this district who, like the individual Plaintiff, will be irreparably harmed by Defendants' "Public Health Order."

8.     Together, GOA and GOF represent the interests of many members and supporters who are being irreparably harmed by Defendants' unconstitutional firearms carry ban.  Moreover, (a) GOA and GOF's affected members and supporters each would have standing to sue individually to challenge Defendants' orders; (b) the interests GOA and GOF seek to protect are germane to their

organizational purposes; and (c) neither the claims asserted, nor the relief requested, require the participation of individual members and supporters in this lawsuit.

9.    Defendant Michelle Lujan Grisham is sued in her official capacity as the Governor of New Mexico. Article V, Section 4 of the New Mexico Constitution vests Defendant Lujan Grisham with the state's "supreme executive power" and tasks her with taking care that the laws be faithfully executed. Defendant Lujan Grisham oversees and exercises authority over the other Defendants in this action, with the unilateral power to remove and replace those who do not adequately implement her unconstitutional agenda. Defendant Lujan Grisham may be served at the New Mexico State Capitol, 4th Floor, Room 400, 490 Old Santa Fe Trail, Santa Fe, NM 87501.

10.    Defendant Patrick M. Allen is sued in his official capacity as the Cabinet Secretary of the New Mexico Department of Health. Appointed by the Governor and serving at her pleasure, Defendant Allen oversees the New Mexico public health system and its emergency response services and has the authority to issue public health emergency orders. Defendant Allen may be served at the New Mexico Department of Health, Harold Runnels Building, 1190 South St. Francis Drive, Santa Fe, NM 87505.

11.    Defendant Jason R. Bowie is sued in his official capacity as the Cabinet Secretary of the New Mexico Department of Public Safety. Appointed by the Governor and serving at her pleasure, Defendant Bowie oversees statewide law enforcement activities, including those of the New Mexico State Police. Defendant Bowie may be served at the New Mexico Department of Public Safety, 4491 Cerrillos Road, Santa Fe, NM 87507.

12.    Defendant W. Troy Weisler is sued in his official capacity as the Chief of the New Mexico State Police, a division of the Department of Public Safety. As State Police Chief, Defendant Weisler exercises, delegates, or supervises all the powers and duties of the New Mexico State

Police, the body responsible for executing and enforcing New Mexico's laws and regulations governing the carrying of firearms in public, and the entity explicitly tasked by the Governor and Secretary Allen with enforcing the unlawful actions challenged here.  Defendant Weisler may be served at the New Mexico Department of Public Safety, 4491 Cerrillos Road, Santa Fe, NM 87507.

## II.      JURISDICTION AND VENUE

13.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

14.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.      STATEMENT OF FACTS

### a.  Defendants' Unilateral Suspension of the United States Constitution.

15.      On September 7, 2023, New Mexico Governor Michelle Lujan Grisham signed into law Executive Order 2023-130 ("EO"), entitled "Declaring State of Public Health Emergency Due to Gun Violence."[1]  Exhibit 1.

16.      First, the EO makes a series of "whereas" allegations about "gun violence" and "gun deaths" within the State of New Mexico. *Id.* at 1.

17.      Second, the EO declares that this state of events "constitutes a statewide public health emergency of unknown duration" and also "constitutes a manmade disaster threatening widespread physical or economic harm that is beyond local control."  *Id.* at 2.

18.      Third, the EO orders the Department of Public Health, Department of Homeland Security and Emergency Management, and Department of Public Safety to "provide an effective and coordinated response" to the purported emergency.  *Id.*

---

[1] https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-130.pdf.

19.     Fourth, the EO sets aside $750,000 to be "expended for the purpose of complying with this Order." *Id.*

20.     Although the EO claims that this alleged public health emergency is "of unknown duration," the EO is effective until October 6, 2023. *Id.* at 3.

21.     The next day on September 8, 2023, acting pursuant to the mandates set forth by the EO, New Mexico Department of Health Cabinet Secretary Patrick M. Allen issued a "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO").[2] Exhibit 2.

22.     The PHO references the purported "gun violence" emergency in the EO, together with the "drug abuse" emergency announced in Executive Order 2023-132 (signed by the Governor on the same day as the EO), alleging that not only "gun violence" but also "drug abuse currently constitute statewide public health emergencies." *Id.* at 1.

23.     Claiming to "possess legal authority" pursuant to a series of New Mexico statutes, along with "inherent constitutional police powers," the PHO announces that Second Amendment rights will be suspended "for the duration of the public health emergencies declared in Executive Orders 2023-130 and 2023-132 and any subsequent renewals of those public health emergency declarations." *Id.* at 1, 3.

24.     Specifically, and as challenged here, the PHO declares "temporary firearm restrictions," namely that "no person … shall possess a firearm … either openly or concealed, within [certain] cities or counties." *Id.* at 1.

25.     Such restricted localities are to be determined by a two-part test in the PHO, if they (i) "averag[e] 1,000 or more violent crimes per 100,000 residents per year since 2021," and (ii) "more

---

[2] https://tinyurl.com/ycyyk6mz.

than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health." *Id.*

26.     Although the Department of Public Health does not appear to have released data on emergency room visits such that an ordinary person could determine which localities are covered by the vague terms of the PHO, the Governor clarified that, "[a]s of Friday, that meant the order only applied to the city of Albuquerque and Bernalillo County."[3]

27.     The PHO creates certain limited exceptions to its broad firearms ban.  First, the PHO's gun ban does not apply to "a law enforcement officer or a licensed security officer." *Id.* at 1.  Second, the PHO's gun ban does not apply "on private property owned or immediately controlled by the person" with the firearm or "on private property that is not open to the public" (such as private homes). *Id.* at 2-3.  Third, the PHO's gun ban does not apply at gun stores, gunsmiths, shooting ranges and similar events, or if traveling "to or from" a permissible location "provided that the firearm is in a locked container and locked with a firearm safety device that renders the firearm inoperable" and thus inaccessible for self-defense. *Id.* at 2.

28.     Then, although already seemingly prohibited by its broad gun ban, the PHO bans firearms specifically "on state property, public schools, and public parks." *Id.* at 3.

29.     The PHO provides that violations thereof "may be subject to civil administrative penalties available at law." *Id.* at 3.  Such penalties, reportedly, "could include the loss of a permit to carry a concealed firearm."[4]  However, when asked "how the order will be enforced and what the penalty will be for violating it," Governor Lujan Grisham replied additionally that "we're likely dealing with misdemeanors."[5]

---

[3] https://tinyurl.com/mrx5d8dy.
[4] *Supra* note 3.
[5] *Supra* note 3.

30.     With respect to *who* will enforce the PHO, local law enforcement has flatly refused to enforce Defendants' orders.[6]  For example, the Albuquerque Mayor's Office stated that "APD is not responsible for enforcing the governor's ban."[7]  Similarly, Bernalillo County Sheriff John Allen stated that "the temporary ban challenges the foundation of our constitution, which I swore an oath to uphold."[8]  Likewise, "Albuquerque police Chief Harold Medina said he won't enforce it."[9]

31.     Unfortunately, the fidelity of local officials to the Constitution is apparently no impediment to Defendants' plan, as the PHO seemingly anticipates such rebellion.

32.     Indeed, the Governor stated openly at her September 8, 2023 press conference that "[w]hat I have in the public health order is not agreed to by every member sitting at this table.  Nor was it developed with all of their expertise at the front."[10]

33.     Thus, the PHO instructs that "[t]he Department of Public Safety shall dispatch additional officers … to Bernalillo County."  *Id.* at 2.  Likewise, the Governor reportedly has claimed that these State Police officers will "enforce the order … because they're required to carry out executive orders."[11]  In other words, the Governor stands ready to send in her private army of stormtroopers to suppress constitutional rights and round up gun owners who dare to disobey her unilateral edicts.

34.     If Defendants' contempt for the Constitution was not clear on the face of the EO and PHO, Governor Lujan Grisham's further comments provide all the confirmation this Court needs.  At the press conference announcing the Governor's suspension of the Second Amendment and her

---

[6] Even anti-gun activist David Hogg thinks Defendants' unilateral suspension of the Constitution is a bridge too far. *See* https://tinyurl.com/2t8z2ubx ("I support gun safety but there is no such thing as a state public health emergency exception to the U.S. Constitution.").
[7] https://tinyurl.com/smfhcs83.
[8] https://tinyurl.com/bdenmx7r; *see also* https://tinyurl.com/bdxrkh67.
[9] https://tinyurl.com/bdenmx7r.
[10] https://www.youtube.com/watch?v=S9oLOubipXc, at 2:30.
[11] *Supra* note 3.

usurpation of queenlike powers, she stated, "if there's an emergency, and I've declared an emergency for a temporary amount of time, I can invoke additional powers.  ___No constitutional right, in my view, including my oath, is intended to be absolute___."[12]

35.    As incredible proof of these executive actions' pretextual nature, the Governor even admitted that "___she doesn't expect criminals to follow the order___."[13]  And yet the Governor also knows that "[r]esponsible gun owners are certainly not our problem — have never been our problem," because *she said so herself*.[14]

36.    Of course, the Governor's paradoxical statements beg the question — if law-abiding gun owners are not the problem, and criminals carrying guns will not obey the PHO, then what is the purpose of the Governor's actions?  The answer is evident.  The EO and PHO serve no purpose other than to implement a radical political agenda to punish law-abiding gun owners for exercising their enumerated rights to carry arms in public for self-defense.

37.    Defendants have presented a credible threat of enforcement of their unconstitutional mandates against Plaintiffs.  Not only has the Governor specifically threatened criminal sanction but also her underlings have put plans in place to send State Police officers into Bernalillo County and the City of Albuquerque to enforce her edicts.

**b.  The Second Amendment.**

38.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

---

[12] *Supra* note 10, at 32:03 (emphasis added).
[13] *Supra* note 7 (emphasis added).
[14] *Supra* note 3.

39.     In its landmark 2008 decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court rejected the nearly uniform opinions reached by the courts of appeals, which for years had claimed that the Second Amendment protects only a communal right of a state to maintain an organized militia.  *Id.* at 581.  Setting the record straight, the *Heller* Court explained that the Second Amendment recognizes, enumerates, and guarantees to ***individuals*** the preexisting right to keep ***and carry arms for self-defense*** and defense of others in the event of a violent confrontation.  *Id.* at 592.

40.     Then, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court explained that the Second Amendment is fully applicable to the states through operation of the Fourteenth Amendment.  *Id.* at 791.

41.     In *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed its conclusion in *Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that we not in existence at the time of the founding," and that this "Second Amendment right is fully applicable to the States."  *Id.* at 411.

42.     Finally, as the Court has now recently explained in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Second and Fourteenth Amendments together guarantee individual Americans not only the right to "keep" firearms in their homes but also ***the right to "bear" firearms in public for self-defense***.  *Id.* at 2122.

43.     Importantly, *Bruen* categorically rejected the judicially created "two-step" interest balancing test that had run rampant through the lower courts after *Heller*, noting that, "[d]espite the popularity of this two-step approach, it is one step too many."  *Id.* at 2127.  For that reason, *Bruen* explicitly rejected the sort of public-safety justifications presented in the EO and PHO, explaining that they have no role to play in the analysis of the scope of Second Amendment rights.

*Id.* at 2126 n.3 ("the right to keep and bear arms … is not the only constitutional right that has controversial public safety implications.").

44.     In other words, according to the Second Amendment's text, and as elucidated by the Court in *Bruen*, if a member of "the people" (here, Plaintiffs) wishes to "keep" or "bear" (here, carry in public for self-defense) a protected "arm" (here, a handgun), then the ability to do so "shall not be infringed."[15]  Period.  There are no "ifs, ands, or buts," and it does not matter (even a little bit) how important, significant, compelling, or overriding the government's ostensible justification for, or interest in, infringing the right may be.  It does not matter whether a government restriction "minimally" versus "severely" burdens (infringes) upon the Second Amendment.  There is no "balancing" or "multi-step" test, and there are no relevant statistical studies to be consulted.  There are no sociological arguments to be considered.  The historically ubiquitous problems of crime do not affect the equation and do not alter the Second Amendment's "unqualified command" as described by *Bruen*.  "The very enumeration of the right takes out of the hands of government — even the Third Branch of Government — the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."  *Heller,* 554 U.S. at 634.

45.     Defendants' actions through the EO and PHO serve completely to eliminate this sacred, enumerated individual right.  For that reason, in this case **it is entirely unnecessary to proceed beyond the plain text of the Second Amendment and the direct holdings of *Heller* and *Bruen***. Defendants have eliminated the right to bear arms for self-defense in public in Albuquerque and

---

[15] *See Bruen*, 142 S. Ct. at 2134 (citation omitted) ("It is undisputed that petitioners Koch and Nash — two ordinary, law-abiding, adult citizens — are part of 'the people' whom the Second Amendment protects.  Nor does any party dispute that handguns are weapons 'in common use' today for self-defense." … We have little difficulty concluding that … the plain text of the Second Amendment protects … carrying handguns publicly for self-defense. … This definition of 'bear' naturally encompasses public carry.").

Bernalillo County, and thus they have plainly infringed a right that "shall not be infringed."  Full stop.

46.     However, additionally and alternatively, *Bruen* teaches that "[t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest" (such as the "gun violence" and "drug abuse" motivations espoused here).  142 S. Ct. at 2126.  "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* at 2126.

47.     In reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," *id.* at 2136, focusing on the period around the ratification of the Second Amendment and perhaps the Fourteenth Amendment (but noting that "post-ratification" interpretations "cannot overcome or alter that text" and that "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791").  *Id.* at 2137; *see also id.* at 2119-37 (discussing the lack of relevant historical prohibitions on carrying firearms in public).

48.     With respect to whether post-Founding historical sources have any role at all to play in the analysis, the Supreme Court technically left the question open, finding it unnecessary to its decision in *Bruen*.  142 S. Ct. at 2138.  Nevertheless, as the Court has repeatedly made clear, even prior to *Bruen*, Reconstruction-era historical sources are to be used (at most) only as confirmation of a historical tradition that was already in existence during the Founding.  For example, in *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), the Court rejected the fact

that "more than 30 States" had enacted a certain type of legislation in the mid-to-late 19th century,

explaining that even such a pattern "cannot by itself establish an early American tradition." *Id.* at

2258-59; *see also Bruen*, 142 S. Ct. at 2137 (using 1800s sources only "as mere confirmation of

what the Court thought already had been established"); *id*. at 2163 (Barrett, J., concurring)

("[T]oday's decision should not be understood to endorse freewheeling reliance on historical

practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights.

On the contrary, the Court is careful to caution 'against giving postenactment history more weight

than it can rightly bear.'"); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020).

49.     The only appropriate inquiry then, according to *Bruen*, is what the "public understanding

of the right to keep and bear arms" was during the ratification of the Second Amendment in 1791,

and *perhaps* during ratification of the Fourteenth Amendment in 1868. *Bruen*, 142 S. Ct. at 2138.

50.     Simply put, there is absolutely no broad and enduring historical tradition of entirely

banning the carrying of arms in public in an entire city or county.  But one not need take Plaintiffs'

word for it.

51.     There is no need for this Court to investigate whether there were any isolated Founding-

era restrictions on firearms carry, much less whether any such post-Ratification era laws existed in

sufficient duration, quantity, and breadth to establish a "historical tradition."  *Bruen* has already

performed the analysis, which is complete, and binding on this Court as to the question presented

here.  As the Court in *Bruen* explained, "there is little evidence of an early American practice of

regulating public carry by the general public."  *Id*. at 2142.

52.     As for Ratification-era laws, *Bruen* recounted that, "[i]n the early to mid-19th century,

some States began enacting laws that proscribed the concealed carry of pistols and other small

weapons."  *Id*. at 2146.  But far from supporting Defendants' actions here, the Court explained that

"these antebellum state-court decisions" in fact "evince a consensus view that ***States could not altogether prohibit the public carry of 'arms'*** protected by the Second Amendment." *Id.* at 2147 (emphasis added).  Indeed, the Court concluded that "history reveals a consensus that States could not ban public carry altogether" (*id*. at 2146), as Defendants have done here.

53.     Finally, *Bruen* explicitly warned against using its "sensitive places" doctrine to "effectively declare" entire jurisdictions of limits for firearms carry.  *Id*. at 2118.  Yet that is precisely what Defendants have done here, declaring an entire city and county almost entirely off-limits to the public carry of firearms.[16]

54.     As the Court succinctly summarized, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense."  *Id*. at 2156.

55.     **That single statement is enough to resolve this case**.

56.     Defendants' actions are definitively foreclosed not only by plain text of the Second Amendment and the four corners of the *Bruen* opinion, but also by any required historical analysis that the Court already has performed and decided against Defendants.

57.     The only step that remains, then, is to enjoin and restrain Defendants' patently unconstitutional actions and edicts.

## COUNT I

---

[16] A number of other jurisdictions already attempted post-*Bruen* adoptions of broad restrictions on public carry in so-called "sensitive places" in name only. However, district courts have almost uniformly ruled these locational restrictions unconstitutional. *See Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813 (W.D.N.Y. Nov. 3, 2022); *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022); *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 U.S. Dist. LEXIS 211652 (W.D.N.Y. Nov. 22, 2022); *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341 (W.D.N.Y. Dec. 29, 2022); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235 (D.N.J. May 16, 2023); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190 (D. Haw. Aug. 8, 2023).  Defendants' actions here do not even pretend to be under the guise of banning the carry of firearms at "sensitive places," the only places carry may be banned under *Bruen*.  Rather, Defendants seek a naked repeal of Second Amendment rights in the city and county.

## U.S. CONST. AMENDS. II, XIV, and 42 U.S.C. § 1983

58.     Plaintiffs re-allege the preceding paragraphs as if set forth in full.

59.     As quoted above, the Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

60.     The Second Amendment is applicable to the states through operation of the Fourteenth Amendment.

61.     The challenged Orders violate "the right of the people to … bear arms" protected by the Second Amendment.

62.     As the Supreme Court has explained, that protection includes the right of law-abiding Americans to carry handguns in public for self-defense.  The challenged Orders eliminate the ability to engage in that protected conduct.

63.     Additionally, the challenged Orders are without historical precedent, as there is no broad and enduring historical tradition – from any time period – completely banning the carrying of firearms in public.

64.     For each of these reasons, the challenged Orders violate rights that the Second Amendment states "shall not be infringed."

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that relief be granted, and judgment be entered in their favor and against Defendants as follows:

1.     An order temporarily restraining, and/or preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or

participation with them who receive actual notice of the injunction, from enforcing the PHO and

EO ("the Orders");

2.      An order declaring that the Orders are unenforceable, unconstitutional, and

violative of the Second and Fourteenth Amendments to the United States Constitution;

3.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

4.      Nominal damages;

5.      Such other further relief as is necessary to effectuate the Court's judgment or that

the Court otherwise deems just and appropriate.

Dated: September 9, 2023

                                                        Respectfully submitted,

/s/ Mark J. Caruso                                      Stephen D. Stamboulieh
Mark J. Caruso                                          Stamboulieh Law, PLLC
4302 Carlisle Blvd., NE                                 MS Bar No. 102784
Albuquerque, NM 87107                                   P.O. Box 428
(505) 883-5000                                          Olive Branch, MS  38654
mark@carusolaw.com                                      (601) 852-3440
                                                        stephen@sdslaw.us
                                                        *Application for admission pending

                                                        Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RANDY DONK, GUN OWNERS OF      )
AMERICA, INC., and GUN OWNERS   )
FOUNDATION,                     )
                                )
Plaintiffs,                     )
                                )
v.                              )     Civil Action No. _____
                                )
MICHELLE LUJAN GRISHAM, in her  )
official capacity as the Governor of )
New Mexico, PATRICK M. ALLEN, in )
his official capacity as the Cabinet Secretary )
of the New Mexico Department of Health, )
JASON R. BOWIE, in his official capacity )
as the Cabinet Secretary of the New Mexico )
Department of Public Safety, and W. TROY )
WEISLER, in his official capacity as the )
Chief of the New Mexico State Police, )
                                )
Defendants.                     )
_____ )

---

**DECLARATION OF RANDY DONK**

---

1.  My name is Randy Donk.  I am an adult, a U.S. citizen, and a resident of New Mexico.  I live in Bernalillo County, New Mexico.

2.  I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief.  Unless otherwise stated, I make this declaration based on personal knowledge.  If called as a witness, I can testify to the truth of the statements contained therein.

3.   I am a law-abiding person, eligible under both state and federal law to possess firearms, and also eligible under state law to carry a concealed handgun.  I am a gun owner, and own more than one firearm, including at least one handgun.

4.   I am a member of Gun Owners of America, Inc.

5.   I am licensed by the New Mexico Department of Public Safety to carry a concealed handgun and my license is current and valid.

6.   I have been licensed by the State of New Mexico to carry a concealed handgun for over ten years, and have successfully passed those state background checks, as well as federal background checks when I purchase firearms.  Additionally, I am a Sheriff's Volunteer.  As a condition of this position, I was required to pass additional and more stringent background checks, which passed with no issues.

7.   On September 8, 2023, I heard that the Governor of the State of New Mexico and the Secretary of the New Mexico Department of Health issued Orders attempting to suspend my ability to publicly carry my firearm, either openly or concealed.

8.   I carry my handgun with me every day, and everywhere it is legal to do so.  Basically, when I leave my house, even if only going into my front yard, I have my handgun on my person.

9.   I live approximately 50 feet from Albuquerque, and travel into Albuquerque regularly to shop for groceries, spend leisure time, and eat at restaurants.  I am also aware that there is an ordinance that purports to apply the City of Albuquerque's rules to those who live within 5 miles of the City, like I do.  I thus am affected by the challenged actions in both the City of Albuquerque and Bernalillo County.

10. For instance, I frequently shop at Walmart in Albuquerque, and lawfully carry my handgun.  I also go to restaurants, like Thai Spice in Albuquerque, and eat.  These places I frequent allow firearms to be carried by individuals, like me, who are licensed to carry them.

**App. 25**

11. I fully intend to ignore these Orders, because they are clearly unlawful and categorically unconstitutional, as they violate my Second Amendment right to bear arms in public, which the Supreme Court recently reaffirmed.  I intend to carry my firearm in the regular places I normally carry, including stores such as Walmart and restaurants in Albuquerque such as Thai Spice.

12. I understand that the State Police will be enforcing these Orders, which could lead to them citing me, fining me, revoking my carry permit, and even prosecuting me criminally.

13. I am now in the position that my Governor and her Secretary have seen fit to suspend the Second Amendment to further an unconstitutional political agenda, placing me in the predicament of either choosing to give up my Constitutional right to public carry, or be cited and arrested for an Order neither of them has the power to enact.

14. If I am arrested, it could lead to the loss of my ability to volunteer with the Sheriff's office, problems with my employment, loss of my concealed handgun permit, or other ramifications that are currently unknown to me.

15. The Second Amendment right states that my God-given, preexisting, natural right to self-defense "shall not be infringed," and yet the Governor and her Secretary are blatantly infringing on that right.

16. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 9, 2023

_____

**RANDY DONK**

3

**App. 26**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RANDY DONK,                                      )
GUN OWNERS OF AMERICA, INC.,                     )
and GUN OWNERS FOUNDATION,                       )
                                                 )
Plaintiffs,                                      )
                                                 )
v.                                               )     Civil Action No. 1:23-cv-00772
                                                 )
MICHELLE LUJAN GRISHAM, in her                   )
official capacity as the Governor of             )
New Mexico, PATRICK M. ALLEN, in                 )
his official capacity as the Cabinet Secretary   )
of the New Mexico Department of Health,          )
JASON R. BOWIE, in his official capacity         )
as the Cabinet Secretary of the New Mexico       )
Department of Public Safety, and W. TROY         )
WEISLER, in his official capacity as the         )
Chief of the New Mexico State Police,            )
                                                 )
Defendants.                                      )
_____)

## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Purporting to respond to recently declared "statewide public health emergencies" of "gun violence and drug abuse," New Mexico Governor Michelle Lujan Grisham and Department of Health Secretary Patrick M. Allen ("Defendants") have asserted the unilateral power to suspend constitutional rights and impose what is essentially martial law. To that end, they have promulgated an executive order signed by the Governor on September 7, 2023, and thereafter a "public health emergency order" signed by the Secretary on September 8, 2023, that flatly eliminate the right to "bear arms" in public in various "cities or counties" within the State that meet a convoluted, multi-part test for levels of criminal activity.

Aware that local authorities have publicly announced that they are unwilling to enforce this clearly unconstitutional edict, and have staunchly refused to participate in Defendants' scheme to deprive their constituents of their constitutional rights, Defendants have ordered the New Mexico State Police to act as a private army of stormtroopers to be sent *en masse* to enforce Defendants' open and notorious subversion of constitutional rights.

There is no defense to Defendants' actions — legal, moral, or otherwise.  Their actions clearly and unambiguously violate the Second Amendment's protection of the right to "bear arms" that "shall not be infringed," and deprive law-abiding gun owners of their only means of self-defense from criminal attack while in public.  For that reason, this Court must end this unconstitutional charade before the train even leaves the station.

To that end, and because Plaintiffs and thousands of others like them will suffer serious and irreparable harm, not only to their constitutional rights but also potentially to their personal safety (by being disarmed in public), **Plaintiffs request an immediate Temporary Restraining Order be issued, on an emergency basis**, followed by a preliminary and then permanent injunction, and also seek declaratory and other relief.  Moreover, because there is literally nothing that Defendants can offer as a legal defense to their blatant and egregious constitutional violations, Plaintiffs ask that a restraining order be issued *ex parte*, without any opportunity for Defendants to respond or be heard.  As a federal district court in North Carolina ruled, even prior to *Bruen*, emergency declarations that suspend the Second Amendment are unconstitutional.  *Bateman v. Perdue*, 881 F. Supp. 2d 709 (E.D.N.C. 2012).

## I.    Introduction

Plaintiffs' Complaint lays out the factual history underlying the challenged Orders:  first, Executive Order 2023-130 ("EO"), issued September 7, 2023 by the Governor, which declares a

public health emergency from firearm violence, and second, Defendant Allen's "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO"), issued September 8, 2023, which purports to ban the possession of firearms in all public places within the City of Albuquerque and Bernalillo County.  Compl. ¶¶ 15-37.  Specifically, and as challenged here, the PHO declares certain "temporary firearm restrictions," namely that "no person … shall possess a firearm … either openly or concealed, within [certain] cities or counties."  Such restricted localities are to be determined by a two-part test in the PHO, if they (i) "averag[e] 1,000 or more violent crimes per 100,000 residents per year since 2021," and (ii) "more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health." As Defendants clarify, this currently means the City of Albuquerque and Bernalillo County. Compl. ¶ 26.

The PHO creates certain limited exceptions to its broad firearms ban.  First, the PHO's gun ban does not apply to "a law enforcement officer or a licensed security officer."  Second, the PHO's gun ban does not apply "on private property owned or immediately controlled by the person" with the firearm or "on private property that is not open to the public" (such as private homes).  Third, the PHO's gun ban does not apply at gun stores, gunsmiths, shooting ranges and similar events, or if traveling "to or from" a permissible location "provided that the firearm is in a locked container and locked with a firearm safety device that renders the firearm inoperable" and thus inaccessible for self-defense.  Finally, although already seemingly prohibited by its broad gun ban, the PHO bans firearms specifically "on state property, public schools, and public parks."

The PHO provides that violations thereof "may be subject to civil administrative penalties available at law."  *Id.* at 3.  Such penalties, reportedly, "could include the loss of a permit to carry

a concealed firearm." However, when asked "how the order will be enforced and what the penalty will be for violating it," Governor Lujan Grisham replied additionally that "we're likely dealing with misdemeanors."

Interestingly enough, Defendants appear to recognize the blatant unconstitutionality of their actions as, in taking the challenged actions, the Governor has foresworn her oath of office (Compl. ¶ 34), and local law enforcement flatly refuses to enforce her edicts, thus requiring Defendants to enlist a cadre of State Police officers to be sent to the affected areas in order to impose (presumably up to and including at the barrel of a gun) the Governor's will upon the people. *Id*. ¶¶ 30-34.

Plaintiff Randy Donk is a gun owner who resides just outside the City of Albuquerque, in Bernalillo County, New Mexico. Compl. ¶5. Mr. Donk is a law-abiding person who currently possesses a valid New Mexico Concealed Handgun License ("CHL"). Plaintiff Donk carries a lawfully owned firearm for self-defense in public, both concealed and at times openly, on a daily basis. Plaintiff Donk's daily activities take him throughout both Bernalillo County and the City of Albuquerque. Plaintiff Donk will continue carrying his firearm in public throughout the City of Albuquerque and Bernalillo County, in spite of Defendants' unconstitutional edicts, placing him at great risk of irreparable harm and even potential arrest and criminal prosecution (not to mention loss of his New Mexico CHL, seizure of his firearm, and further infringement of his right to "bear arms"). *See* Exhibit 3.

Plaintiffs Gun Owners of America, Inc. and Gun Owners Foundation are nonprofit organizations that exist to protect and preserve the Second Amendment right to keep and bear arms. With over two million members and supporters, GOA and GOF represent others who, like

Mr. Donk (a member of GOA), are affected and irreparably harmed by the operation of the challenged Orders.  *See* Declaration of Erich Pratt, Exhibit 4.

Without swift and decisive injunctive relief from this Court, Plaintiffs will be irreparably harmed not only through Defendants' egregious violation of their constitutional rights, but also potentially including threats to their personal safety, as Defendants' actions have deprived Plaintiffs of their ability to lawfully bear arms in public for their own self-defense, in the midst of what Defendants themselves style a public health emergency of violent crime in the city and county.

## II.      Standard for Injunctive Relief.

To obtain a temporary restraining order or preliminary injunction, a "Plaintiff must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996); *see also People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.").   "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2023 U.S. Dist. LEXIS 29056, at *33 (D.N.M. Feb. 22, 2023). Moreover, the third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.     Plaintiffs Satisfy the Requirements for Injunctive Relief.

### A.  Plaintiffs Are Exceedingly Likely to Prevail on the Merits.

"A 'substantial likelihood' [of prevailing on the merits] is defined as 'a prima facie case showing a reasonable probability that [the movant] will ultimately be entitled to the relief sought.'" *Peterson v. Kunkel*, 492 F. Supp. 3d 1183, 1194 (D.N.M. 2020).  Plaintiffs more than meet this burden.

As outlined in Plaintiffs' Complaint, Defendants' unilateral suspension of the Second Amendment to the United States Constitution is entirely foreclosed by the amendment itself, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  Defendants' EO and PHO operate to prohibit the public carry of arms for self-defense in the entirety of public areas in the City of Albuquerque and Bernalillo County.  *See* Compl. ¶ 26.  Yet as the *Bruen* Court observed, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense."  142 S. Ct. at 2156. This observation alone is dispositive; Defendants simply cannot meet their burden of proving a broad and enduring early American tradition of outright prohibitions on public carry when this very issue has already been litigated and resolved against their position by this nation's highest Court.[1]  Indeed, it is entirely unnecessary for this Court to proceed beyond the plain text of the Second Amendment and the four corners of the *Heller* and *Bruen* opinions.

---

[1] Other jurisdictions that have attempted to do piecemeal what Defendants now seek to do wholesale have met a similar fate, with district courts nearly uniformly striking down state bans on guns in a host of so-called "sensitive places."  *See Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813 (W.D.N.Y. Nov. 3, 2022); *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022); *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 U.S. Dist. LEXIS 211652 (W.D.N.Y. Nov. 22, 2022); *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341 (W.D.N.Y. Dec. 29, 2022); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235 (D.N.J. May 16, 2023); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190 (D. Haw. Aug. 8, 2023).

And even though this Court need not engage in a *Bruen* analysis because it is already bound by these precedents (which are on all fours with the challenged Orders), Plaintiffs are substantially certain to prevail even if such a textual and historical analysis were to be relitigated.  Plaintiffs are members of "the people" who carry handguns for self-defense in public.  *See* Compl. ¶ 44 ("[I]f a member of 'the people' (here, Plaintiffs) wishes to 'keep' or 'bear' (here, carry in public for self-defense) a protected 'arm' (here, a handgun), then the ability to do so 'shall not be infringed.'"); *see also id.* n.15.  Because Plaintiffs' course of conduct falls squarely within the Second Amendment's plain text, Defendants bear the burden of proving a broad and enduring Founding-era tradition of literally *eliminating* the right to bear arms in public.  They cannot.  Indeed, *Bruen* already reached this conclusion as well, noting that "there is little evidence of an early American practice of regulating public carry by the general public," and "antebellum state-court decisions evince a consensus view that States could not altogether prohibit the public carry of 'arms' protected by the Second Amendment."  *Id.* at 2146-7.  Again, since *Bruen* has already decided this question against Defendants, this Court need not look further than the Court's definitive pronouncements.  As Defendants' actions and orders clearly violate the Second Amendment, Plaintiffs are highly likely to succeed on the merits of their claims.

**B.  Plaintiffs' Constitutional Injuries Constitute Irreparable Harm.**

"Any deprivation of any constitutional rights," even for minimal periods of time, constitutes irreparable harm.  *Peterson*, 492 F. Supp. 3d at 1199; *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).  Moreover, the "theoretical ability to avoid a violation of … constitutional rights … does not alter the irreparable injury analysis."  *Herrera v. Santa Fe Pub. Schs.*, 792 F. Supp. 2d 1174, 1183 (D.N.M. 2011).  And, to the extent that there still remains a question in the Tenth Circuit as to whether irreparable-harm analysis requires mere allegations of constitutional harm or

a demonstration of likely violations, this Court need not address this question because constitutional violations are certain and presently occurring. *See Peterson*, 492 F. Supp. 3d at 1199.

Indeed, Defendants' EO and PHO impose civil and potentially criminal penalties for the exercise of an enumerated right. *See* Compl. ¶ 29 (citations omitted) ("The PHO provides that violations thereof 'may be subject to civil administrative penalties available at law.' Such penalties, reportedly, 'could include the loss of a permit to carry a concealed firearm.' However, when asked 'how the order will be enforced and what the penalty will be for violating it,' Governor Lujan Grisham replied additionally that 'we're likely dealing with misdemeanors.'"). Moreover, Defendants have expressed an unequivocal intent to enforce the PHO by "instruct[ing] that '[t]he Department of Public Safety shall dispatch additional officers … to Bernalillo County.'" Compl. ¶ 33. Active enforcement of the PHO via enlistment of State Police in response to widespread local opposition cannot make the certainty of constitutional violations clearer. *See id.* ¶¶ 30-33.

Because "[t]he likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis," Plaintiffs have easily demonstrated the necessity for a temporary restraining order to preserve and vindicate their constitutional rights. *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2023 U.S. Dist. LEXIS 29056, at *33 (D.N.M. Feb. 22, 2023).

**C.  The Balance of Equities and Public Interest Overwhelmingly Favor the Plaintiffs.**

Plaintiffs' threatened injury — the elimination of their enumerated rights to carry arms for self-defense — outweighs any harm a restraining order or injunction would cause Defendants because Defendants face no harm whatsoever from a preservation of the status quo of constitutional order. Moreover, the public interest "favors preliminarily enjoining state statutes likely to be held unconstitutional." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 771 (10th

Cir. 2010).  This factor is not an invitation to backdoor interest balancing; "there are no relevant statistical studies to be consulted.  There are no sociological arguments to be considered."  Compl. ¶ 44; *see also Bruen*, 142 S. Ct. at 2131 ("The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense.").  Because the EO and PHO unconstitutionally infringe the right to keep and bear arms, "enjoining their enforcement is an appropriate remedy not adverse to the public interest."  *Utah Licensed Bev. Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001).

<u>Conclusion</u>

As the challenged Orders are patently unconstitutional, definitively foreclosed by the Second Amendment's text and the Supreme Court's holdings, this Court should immediately grant an ex parte temporary restraining order without notice to Defendants or an opportunity for them to be heard, followed by a preliminary injunction preserving the status quo and Second Amendment rights.

Respectfully submitted,

/s/ Mark J. Caruso
Mark J. Caruso
4302 Carlisle Blvd., NE
Albuquerque, NM 87107
(505) 883-5000
mark@carusolaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
*Application for admission pending

Attorneys for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

       I Mark J. Caruso, hereby certify that I have on this day, caused the foregoing document or pleading to be mailed by United States Postal Service first-class mail, postage pre-paid, to the following non-ECF participants:

Michelle Lujan Grisham
New Mexico State Capitol
4th Floor, Room 400
490 Old Santa Fe Trail,
Santa Fe, NM 87501

Patrick M. Allen
New Mexico Department of Health
Harold Runnels Building
1190 South St. Francis Drive
Santa Fe, NM 87505

Jason R. Bowie
New Mexico Department of Public Safety
4491 Cerrillos Road
Santa Fe, NM 87507

W. Troy Weisler
New Mexico Department of Public Safety
4491 Cerrillos Road
Santa Fe, NM 87507

<u>And by FACSIMILE to:</u>

Attorney General Raul Torrez
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
Fax: (505) 490-4883

                                   */s/ Mark. J. Caruso*
                                   Mark J. Caruso

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RANDY DONK, GUN OWNERS OF )
AMERICA, INC., and GUN OWNERS )
FOUNDATION, )
                                        )
    Plaintiffs, )
                                          )
v. )        Civil Action No. 1:23-cv-00772-DHU-LF
                                          )
MICHELLE LUJAN GRISHAM, in her )
official capacity as the Governor of )
New Mexico, PATRICK M. ALLEN, in )
his official capacity as the Cabinet Secretary )
of the New Mexico Department of Health, )
JASON R. BOWIE, in his official capacity )
as the Cabinet Secretary of the New Mexico )
Department of Public Safety, and W. TROY )
WEISLER, in his official capacity as the )
Chief of the New Mexico State Police, )
                                          )
    Defendants. )
_____)

**<u>PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY
INJUNCTION AS TO THE AMENDED PUBLIC HEALTH ORDER
ISSUED SEPTEMBER 15, 2023</u>**

In support of their oral motion for preliminary injunction against the Amended Public Health Order of September 15, 2023 (Doc. 19-1; the "APHO"), made at the October 3, 2023 Hearing, and acknowledged by this Court's October 4, 2023 Order, Plaintiffs Randy Donk, Gun Owners of America, Inc., and Gun Owners Foundation ("Plaintiffs") submit this Supplemental Brief. As noted at the Hearing, Plaintiffs join in the request for injunction and the arguments presented by counsel in case number 1:23-cv-771-DHU-LF, and rely on Plaintiffs' initial Motion for Preliminary Injunction, Doc. 2, for background[1] and the applicable standard of review.

## I.  THE APHO IS VOID-FOR-VAGUENESS, AS IT FAILS TO PROVIDE ORDINARY CITIZENS FAIR NOTICE OF ITS PROHIBITIONS AND INVITES ARBITRARY ENFORCEMENT

The APHO is unconstitutionally vague because it fails to provide adequate warning to individuals of ordinary intelligence as to where firearms carry is prohibited, especially regarding the term "other public area provided for children to play in." A law may be found unconstitutionally vague if it either fails "to provide a person of ordinary intelligence fair notice of what is prohibited" or, as an independent reason, "if it authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *Hill v. Colorado*, 530 U.S. 703, 732 (2000). While often used in First Amendment cases, the "void-for-vagueness doctrine is embodied in the due process clauses of the Fifth and Fourteenth Amendments," and thus protects citizens against deprivation of any constitutional rights. *Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1267 (D.N.M. 2022) (citing *Williams*, 553 U.S. at 304). Thus, when a law's "vagueness exerts a 'chilling effect'" on constitutional rights,

---

[1] As a preliminary matter, Plaintiffs continue to have standing. For example, Donk walks his dog in public parks, takes his grandchildren to local playgrounds, and visits numerous locations (such as malls, grocery stores, and fast food restaurants) that are open to the public and have "area[s] provided for children to play in." *See* Exhibit 1 at ¶¶ 4-11.

1

**App. 38**

the doctrine "'demands'" the law provide "'a greater degree of specificity than in other contexts' and the [law] is tested for vagueness on its face." *Voter Reference Found., LLC*, 616 F.Supp. 3d at 1269 (quoting *Smith v. Goguen*, 415 U.S. 566, 573 (1974)). The vagueness doctrine and considerations apply in the Second Amendment context as well because, "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) (citation omitted). Here, the APHO fails both independent vagueness analyses because it is so vague as to chill the Second Amendment activity of ordinary citizens and fails to give police officers sufficient guidelines to avoid arbitrary enforcement.

As was evident at the October 3 Hearing, even legal minds can vary greatly on interpreting what constitutes an "other public area provided for children to play in," with defense counsel discussing public pools and community centers, generally understood as places for *everyone* to play in, and which did not occur to plaintiffs' counsel who also questioned the applicability to sandlots and private play spaces open to the public.[2] The word "other" excludes the parks and playgrounds previously listed, leaving the interpretation potentially as broad as one's imagination.[3] And where only a portion of a facility is "provided for children to play," the APHO does not specify whether the prohibited "area" is just that portion or the whole facility (such as a grocery store with

---

[2] *See*, Clerk's Minutes, Doc. 22, at 7 and 9.
[3] Even the phrase "public are" is unclear, as it could refer only to locations owned, operated, and maintained by the government, or broadly to include private property open to the public (a splash pad at a shopping center, for instance). *See, e.g., Wolford v. Lopez,* No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190, at *43 (D. Haw. Aug. 8, 2023). And, although the text appears to govern only on *public* playgrounds, it likewise is unclear whether that applies only to government property, or more broadly to playgrounds on private property (such as at a church, or common property owned by an HOA).

2

**App. 39**

coin-operated kiddie rides out front).  Further, completely absent from the APHO's language is any requirement that clear signage be posted providing notice to visitors, or any guidance to law enforcement to prevent arbitrary or discriminatory enforcement.  Worry that one may not recognize an "area" as such, or worse that an enforcing officer's imagination may be broader than one's own, will chill the exercise of citizens' right to bear arms in public for self-defense.  The Secretary had ample opportunity to better enumerate a list of prohibited places but failed to do so.  The APHO is thus unconstitutionally vague on both independent grounds as it (1) fails to give fair warning of its prohibition and (2) provides no guidelines to avoid arbitrary enforcement.

II.    THE AMENDED PHO IS REPUGNANT TO THE ORIGINAL PUBLIC UNDERSTANDING OF THE SECOND AMENDMENT.

A.  **Defendants Fabricate a Nonexistent "Traditionally Sensitive Places" Standard to Avoid Supporting Their Ahistorical Firearm Prohibition at Schools and Playgrounds.**

Defendants make the stunning claim that, "[i]n the context of 'sensitive places,' the Court is not required to engage in any historical analysis … because 'some gun-free zones are simply obvious, undisputed, and uncontroversial.'" Opp. at 15.  In other words, Defendants urge this Court to latch onto untested dicta (that the Supreme Court expressly warned was untested) and overrule the standard of review of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), adopting in its place an indeterminate "know it when you see it" approach. Neither case supports such revisionism.  Although the *Heller* Court speculated that some prohibitions may be "presumptively lawful" based on their "longstanding" tenure, 554 U.S. at 626, 627 n.26, it did not exempt *any* prohibitions from its textual and historical standard of review—quite the opposite, the Court explicitly welcomed challenges to all such restrictions, noting that "there will be time enough to expound upon the historical justifications for

**App. 40**

the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 635. *Bruen*

likewise provided no exemptions to its analytical structure.

Accordingly, Defendants have failed to bear their historical burden to support a sweeping

firearm prohibition at all "schools," regardless of type, much less playgrounds (which Defendants

erroneously analogize to schools), which were not mentioned in *Bruen* or *Heller*.  Nor is the mere

presence of children "in large numbers," Opp. at 15, a hallmark of any so-called "sensitive place."

*See Bruen*, 142 S. Ct. at 2134 (already rejecting "expanding the category of 'sensitive places'

simply to all places of public congregation"). Instead, "sensitive places" are, at most, "typically

secured locations[] where uniform lack of firearms is generally a condition of entry" and "where

a bad-intentioned armed person could disrupt key functions of democracy." *Hardaway v. Nigrelli*,

636 F. Supp. 3d 329, 346 (W.D.N.Y. 2022). Absent these hallmarks, individuals must protect

themselves, and a categorical firearm ban is invalid.

**B. Defendants Utterly Fail to Evince an Enduring Early American Tradition of Prohibiting Firearms in Public Parks.**

Defendants cite *Md. Shall Issue, Inc. v. Montgomery County*, No. TDC-21-1736, 2023 U.S.

Dist. LEXIS 117902 (D. Md. July 6, 2023), in a seeming adoption of all of the historical analogues

discussed therein. At the outset, it is not this Court's "oblig[ation] to sift the historical materials

for evidence to sustain" Defendants' Amended PHO. *Bruen*, 142 S. Ct. at 2150. But to the extent

Defendants rely on irrelevant Reconstruction-era city ordinances to shed light on the original

public understanding of the Second Amendment as adopted in 1791, such reliance is misplaced.

Via *Md. Shall Issue*, Defendants reference—but conveniently omit their dates—a dozen

city ordinances regulating firearms in parks from 1857 to 1917, and two state laws from 1905 and

1919.  Opp. at 17–18; *Md. Shall Issue*, 2023 U.S. Dist. LEXIS 117902, at *36–37. But absent a

Founding-era tradition *to confirm*, these late-in-the-game "analogues" are wholly irrelevant. And "[a]s with … late-19th-century evidence, the 20th-century evidence presented … does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 n.28. Indeed, while the *Bruen* Court acknowledged "an ongoing *scholarly* debate" as to the pertinent historical time period for originalist analysis, *id.* at 2138 (emphasis added), the Court's own precedents have already established Founding-era primacy, and the secondary (if at all), merely confirmatory relevancy of the Reconstruction-era. *See id.* at 2137 (treating 19th-century evidence "as mere confirmation of what the Court thought had already been established"); *id.* (rejecting "'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text'"); *see also Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2258–59 (2020) (rejecting evidence of late-19th-century laws from "more than 30 States" because "[s]uch a development … cannot by itself establish an early American tradition"). Finally, Defendants cite laws from territorial New Mexico (1869) and Texas (1871) in a last-ditch effort to cobble together a tradition that never existed. *See Bruen* at 2154 (categorically rejecting ordinances passed by territories). But the New Mexico law operated as a total ban on public carry, Opp. at 18, the sort of ban that already has been found unconstitutional. *See Bruen*, 142 S. Ct. at 2134 (noting zero historical basis for declaring Manhattan a "sensitive place"). That leaves Defendants' Texas law, which made *no mention of parks whatsoever*.[4] Altogether, Defendants have failed to bear their historical burden. Just like its initial version, the Amended PHO violates the Second Amendment and must be enjoined.

Respectfully submitted,

---

[4] *See* https://tinyurl.com/23dep8mb, at § 3.

5

**App. 42**

Dated:  October 6, 2023

/s/ Anthony R. Napolitano
Anthony R. Napolitano
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E Camelback Rd, Ste. 210
Phoenix, AZ 85018
(602) 848-5449
anapolitano@bfsolaw.com

Mark J. Caruso
4302 Carlisle Blvd., NE
Albuquerque, NM 87107
(505) 883-5000
mark@carusolaw.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day, caused the foregoing document or pleading to be

file with this Court's CM/ECF system which generated a notice and delivered a true and correct

copy to all counsel of record.

*/s/ Shelly Curry*_____

**App. 43**

# EXHIBIT 1

Anthony R. Napolitano,
*Arizona Bar #034586*
*District of New Mexico Bar #23-284*
**Bergin, Frakes, Smalley & Oberholtzer, PLLC**
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Telephone: (602) 888-7855
Facsimile: (602) 888-7856
anapolitano@bfsolaw.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RANDY DONK, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, in her official capacity as the Governor of New Mexico, PATRICK M. ALLEN, in his official capacity as the Cabinet Secretary of the New Mexico Department of Health, JASON R. BOWIE, in his official capacity as the Cabinet Secretary of the New Mexico Department of Public Safety, and W. TROY WEISLER, in his official capacity as the Chief of the New Mexico State Police,<br><br>Defendants. | Case No. 1:23-cv-00772-DHU-LF<br><br>**SUPPLEMENTAL DECLARATION OF PLAINTIFF RANDY DONK** |

1. My name is Randy Donk. I am an adult, a U.S. citizen, and a resident of New Mexico. I live in Bernalillo County, New Mexico.

2. I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief. Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained therein.

3.  As stated in my previous declaration of September 9, 2023, I carry my handgun with me every day, everywhere it is lawful to do so.

4.  I regularly walk my dog into and through public parks.  In one of these locations, access along the paved path to the dog area requires traveling through a playground.  There is no other reasonable way for me to access this area of the park that is set aside for dogs (not children) to play.

5.  I frequently visit public parks, playgrounds, and public areas provided for children to play in with my grandchildren.  I also intend to visit the Esperanza Bike Shop and BMX Complex with my grandson in the near future.

6.  I utilize City of Albuquerque Open Space areas several times a year.  Among other activities, I use these to hike with my daughter and to fly my drone.

7.  I also use City of Albuquerque Shooting Range Park at least a few times each month, weather depending, for its shooting facilities to maintain my firearms proficiency, an activity that requires possession of firearms.  I possess a card showing that I am authorized to use the Shooting Range Park, which bears a seal or logo indicating that it is an "open space" run by City of Albuquerque Parks and Recreation.

8.  I shop at malls, grocery stores, Home Depot, Walmart, and other stores and restaurants, many of which either provide areas for children to play or are located in shopping centers that have indoor and/or outdoor spaces for children to play.

9.  I visit fast food restaurants, such as McDonalds, which have attached play spaces dedicated to children.

10. I go to Paradise Hills Community Center for events, which has a public swimming pool as well, and intend to take my grandchildren there in the near future.

11. I also intend to attend the Bernalillo County Sheriff's Office's Trunk-or-Treat event on October 21, 2023, at the John A. Prive Law Enforcement Center, 400 Roma Ave NW, Albuquerque, NM, where children and members of the public will be invited to play and enjoy other activities.

12. I intend to continue the above-described activities, and intend to carry my firearm lawfully everywhere I am lawfully able to do so, but the Amended Public Health Order makes carrying my firearm in many of the places I normally travel, and still intend to travel, unlawful.

13. It is necessary for me to carry my firearm not only when I am by myself, but also (and even more importantly) when I am with my children and grandchildren, to ensure that I am able to defend not only my life but also those of my loved ones.  The conditions, and types of other individuals, at any area open to the public, including parks, playgrounds, shopping centers, and open spaces, are variable and unpredictable, so I cannot otherwise guarantee that danger posed by ill-intentioned people can be avoided or guarded against without being armed.

14. As a grandfather, it is my responsibility to protect my grandchildren when they are under my care, but the Amended Public Health Order would disarm me and possibly prevent me from protecting my family.  Criminals, by definition, will not obey this order, which will restrict only law-abiding and responsible persons like myself.

15. Notably, the Amended Public Health Order does not even exempt holders of New Mexico concealed carry licenses (myself included), who are among the most law abiding and most responsible members of society.

16. It is my understanding that the Amended Public Health Order issued by Secretary Allen on September 15, 2023, prohibits the carrying of firearms in all or nearly all of the places I have described above.  This places me in the predicament of having to choose between giving up my Constitutional right to public carry, including my ability to defend myself and my grandchildren, or risking citation or arrest for violation of this order, which may further impact my ability to exercise my rights.

17. Further, I find it impossible to identify the full extent of what places fit the term "public areas provided for children to play in," as there is nowhere that such places are clearly listed, nor are these places publicly posted as off-limits to firearms.  This means I

may have to make the choice between giving up my right to carry a firearm in much of my daily activities, or else risk penalties for inadvertent violations where I cannot reasonably determine if I have entered a restricted location.

18. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2023

**RANDY DONK**