Nos. 23-2166, 23-2167, 23-2185

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

WE THE PATRIOTS, INC., et al.,

*Plaintiffs-Appellants*,

v.

MICHELLE LUJAN GRISHAM, in her official capacity only, et al.,

*Defendants-Appellees.*

*(Caption continues inside front cover.)*

_____

On Appeal from the United States District Court for the District of New Mexico
(Nos. 1:23-cv-00772-DHU-LF, 1:23-cv-00773-DHU-LF, 1:23-cv-00778-DHU-LF)
(Hon. David H. Urias)

_____

**SUPPLEMENTAL BRIEF OF DEFENDANTS-APPELLEES**

_____

Holly Agajanian
*Chief General Counsel to Gov. Lujan Grisham*
Kyle P. Duffy
*Deputy General Counsel to Gov. Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Cody Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

Janet Carter
William J. Taylor, Jr.
Carina Bentata Gryting
Everytown Law
450 Lexington Ave, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

Freya Jamison
Everytown Law
P.O. Box 14780
Washington, DC 20044

*(Caption continues from front cover.)*

ZACHARY FORT, et al.,

*Plaintiffs-Appellants*,

v.

MICHELLE LUJAN GRISHAM, in her official capacity only, et al.,

*Defendants-Appellees.*

—————————————————————

RANDY DONK, et al.,

*Plaintiffs-Appellants*,

v.

MICHELLE LUJAN GRISHAM, in her official capacity only, et al.,

*Defendants-Appellees.*

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................1

ARGUMENT....................................................................................................1

    I.    The preliminary injunction issued in *Springer* likely moots these appeals
        as to the Parks Restriction ....................................................................1

    II.    Plaintiffs lack standing because, regardless of the outcome of this suit, separate,
        unchallenged restrictions will continue to prohibit Plaintiffs from carrying
        firearms in parks and playgrounds in Albuquerque and Bernalillo County .......4

    III.    The Governor's authority to regulate firearms through executive orders is not
        at issue in these appeals .....................................................................10

CONCLUSION ...............................................................................................12


Albuquerque Code of Ordinances § 5-8-6...............................................Exhibit 1

Administrative Instruction No. 5-20.......................................................Exhibit 2

Bernalillo County Ordinances §§ 58-12, 58-5, 58-57. ............................Exhibit 3

# TABLE OF AUTHORITIES

## Cases

*Am. Forest & Paper Ass'n v. U.S. EPA,*
  154 F.3d 1155 (10th Cir. 1998) ....................................................................8, 9

*Amdor v. Lujan Grisham,*
  No. S-1-SC-40105 (N.M. Sup. Ct.) ..................................................................12

*Bishop v. Smith,*
  760 F.3d 1070 (10th Cir. 2014) ........................................................................6

*Caldara v. City of Boulder,*
  955 F.3d 1175 (10th Cir. 2020) ......................................................................12

*California v. U.S. Dep't of Health & Human Servs.,*
  941 F.3d 410 (9th Cir. 2019), *cert. granted, judgment vacated on other grounds,*
  141 S. Ct. 192 (2020) .............................................................................2, 3, 4

*Does 1-2 v. Hochul,*
  No. 1:21-cv-05067, 2021 WL 4172915 (E.D.N.Y. Sept. 14, 2021) ...............................2

*Exotic Animal Owners v. New York,*
  98 F. App'x 905 (2d Cir. 2004)........................................................................7

*Feds for Med. Freedom v. Biden,*
  581 F. Supp. 3d 826 (S.D. Tex. 2022).................................................................2

*Fleming v. Gutierrez,*
  785 F.3d 442 (10th Cir. 2015) ...................................................................2, 3, 4

*Florida v. Dep't of Health & Human Servs.,*
  19 F.4th 1271 (11th Cir. 2021) .................................................................2, 3, 4

*Gale v. City & Cnty. of Denver,*
  962 F.3d 1189 (10th Cir. 2020) .......................................................................11

*Hollis v. Lynch,*
  827 F.3d 436 (5th Cir. 2016) ..........................................................................9

*Johns v. Stewart,*
  57 F.3d 1544 (10th Cir. 1995) ........................................................................11

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.,*
  909 F.3d 446 (D.C. Cir. 2018).......................................................................6, 7

*Kramer v. NCS Pearson, Inc.,*
  No. 0:03-cv-01166, 2003 WL 21640494 (D. Minn. July 9, 2003)...................................2

*League of Women Voters of Fla., Inc. v. Byrd,*
  No. 4:23-cv-00216, 2023 WL 11759735 (N.D. Fla. July 11, 2023) ...............................2

*Lujan Grisham v. Reeb*,
    2021-NMSC-006, 480 P.3d 852 (2020) ........................................................ 12

*Lujan Grisham v. Romero*,
    2021-NMSC-009, 483 P.3d 545 (2021) ........................................................ 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 6

*McKissick v. Yuen*,
    618 F.3d 1177 (10th Cir. 2010) .................................................................. 11

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ............................................................................... 5, 6

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ...................................................................... 10

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................... 12

*Renne v. Geary*,
    501 U.S. 312 (1991) ...................................................................................... 6

*Simpson v. Carpenter*,
    912 F.3d 542 (10th Cir. 2018) .................................................................... 11

*Singh v. Cordle*,
    936 F.3d 1022 (10th Cir. 2019) .................................................................. 11

*Springer v. Grisham*,
    No. 1:23-cv-00781, 2023 WL 8436312 (D.N.M. Dec. 5, 2023) .............. 1, 10

*Stevenson v. Blytheville Sch. Dist. No. 5*,
    762 F.3d 765 (8th Cir. 2014) ........................................................................ 4

*Sylvia v. Wisler*,
    875 F.3d 1307 (10th Cir. 2017) .................................................................. 12

*US Magnesium, LLC v. U.S. E.P.A.*,
    690 F.3d 1157 (10th Cir. 2012) .................................................................... 9

*Utah v. Babbitt*,
    137 F.3d 1193 (10th Cir. 1998) .................................................................. 10

*Valdez v. Lujan Grisham*,
    No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022) ......................... 7

*Valdez v. Lujan Grisham*,
    No. 22-2112, 2024 WL 2319752 (10th Cir. May 22, 2024) ............... 6, 7, 9, 10

*White v. United States*,
    601 F.3d 545 (6th Cir. 2010) ........................................................................ 7

*WildEarth Guardians v. Pub. Serv. Co. of Colo.*,
   690 F.3d 1174 (10th Cir. 2012) ............................................................6

**Statutes and Rules**

Administrative Instruction No. 5-20, § 1(B) ..................................................5, 10

Albuquerque Code of Ords. § 5-8-6(G) ..........................................................5, 8

Bernalillo Cnty. Ord. § 58-12(b)(27) ..............................................................5, 8

Bernalillo Cnty. Ord. § 58-5 ...........................................................................5

Bernalillo Cnty. Ord. § 58-57(b)(27) ...............................................................5

N.M. Stat. Ann. § 30-7-2.1 ............................................................................5

N.M. Stat. Ann. §§ 12-10A-1 to -19..............................................................11

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
   § 3531.5 (3d ed. 2008 & Supp. 2024) .........................................................7

## INTRODUCTION

Defendants submit this brief in response to the Court's order directing supplemental briefing on the following issues:

1. Given the preliminary injunction entered in *Springer v. Grisham*, No. 1:23-cv-00781, 2023 WL 8436312, at *10 (D.N.M. Dec. 5, 2023), are these appeals moot as to the ban on carrying firearms in parks?
2. Separately from the executive order(s) at issue in these appeals, do the City of Albuquerque and Bernalillo County restrict firearms in parks and/or playgrounds, and if so, how does that affect these appeals?
3. Is the governor's authority to regulate firearm carry through continuous, monthly executive orders (extending a public health emergency related to gun violence) an issue in these appeals?

As explained below, the injunction in *Springer* likely moots these appeals as to the Parks Restriction (Part I). Moreover, Plaintiffs' failure to challenge separate laws prohibiting them from carrying firearms in the parks they say they wish to visit means that they lack standing (Part II). And lastly, the Governor's authority to regulate firearms through executive orders is not an issue in these appeals (Part III).

## ARGUMENT

### I.  The preliminary injunction issued in *Springer* likely moots these appeals as to the Parks Restriction

Tenth Circuit precedent does not clearly resolve whether a preliminary injunction entered in one case against a challenged law moots a request for the same relief against the same law sought in a separate case. There are arguments and caselaw on both sides of this issue. However, as explained below, the stronger argument is that these appeals are moot to the extent they challenge the Parks Restriction.

The key question when considering mootness is "whether granting a *present*

determination of the issue offered will have some effect in the real world." *Fleming v. Gutierrez*, 785 F.3d 442, 444-45 (10th Cir. 2015) (citation omitted). In other words, a case is moot when it is "impossible for the court to grant any effectual relief whatever to a prevailing party." *Id.* at 445 (citation omitted). Thus, several district courts have concluded that a preliminary injunction entered in one case moots a subsequent request for a similar preliminary injunction, reasoning that the plaintiff in the new case already has the relief they are seeking, and that imposing a second injunction would be duplicative and without real-world effect.[1] This same reasoning applies here: enforcement of the Parks Restriction is currently preliminary enjoined, and therefore entering a second preliminary injunction in this case would not provide Plaintiffs with any further relief.

It is true the Ninth and Eleventh Circuits recently held that appeals in similar procedural postures fell within the exception to mootness for cases capable of repetition yet evading review. *See California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 421-23 (9th Cir. 2019), *cert. granted, judgment vacated on other grounds,* 141 S. Ct. 192 (2020); *Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1279-86 (11th Cir. 2021). "Under this exception, which courts reserve for exceptional situations, issues under review are not moot

---

[1] *See, e.g.*, *League of Women Voters of Fla., Inc. v. Byrd*, No. 4:23-cv-00216, 2023 WL 11759735, at *1 (N.D. Fla. July 11, 2023) (denying motion for preliminary injunction as moot because, due to preliminary injunctions entered in another case, "[p]laintiffs do not face irreparable harm"); *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 829 (S.D. Tex. 2022) ("Because [the challenged] order has been enjoined nationwide, this court declines to grant any further preliminary relief." (citation omitted)); *Does 1-2 v. Hochul*, No. 1:21-cv-05067, 2021 WL 4172915, at *1 (E.D.N.Y. Sept. 14, 2021) (denying TRO as moot where another court had issued TRO awarding same relief); *Kramer v. NCS Pearson, Inc.*, No. 0:03-cv-01166, 2003 WL 21640494, at *3 (D. Minn. July 9, 2003) (same).

if they (1) evade review because the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) are capable of repetition, such that there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Fleming*, 785 F.3d at 445 (citation omitted); *accord California*, 941 F.3d at 423. Focusing primarily on the second prong, the Ninth Circuit concluded that the plaintiffs had a "reasonable expectation" that they would be subjected to the same action again because the injunction in the separate case was (a) on appeal and, as a disfavored nationwide injunction, likely to be vacated, and (b) regardless, "like all preliminary injunctions, of *limited duration*," and therefore "[o]nce the [] district court rules on the merits of that case, the preliminary injunction will expire." *Id.* at 423; *see also Florida*, 19 F.4th at 1280-85 (similar). Both courts also invoked the prudential considerations of comity and the "interest in allowing the law to develop across multiple circuits." *California*, 941 F.3d at 423; *Florida*, 19 F.4th at 1285-86.

Plaintiffs might seek to rely on *California* and *Florida* to argue this appeal falls within the same exception. Though this argument may have some intuitive appeal, it is doubtful that the "evading review" part of the exception should apply in the context of an interlocutory appeal of a preliminary injunction ruling when the underlying controversy remains live—something neither of the panels in *California* or *Florida* appears to have considered. In *Fleming*, by contrast, this Court dismissed an interlocutory appeal from the grant of a preliminary injunction as moot after concluding that arguments disputing the district court's analysis would not evade review where the complaint, which sought both permanent injunctive and declaratory relief, "remains pending in the district court." 785

F.3d at 446; *see also id.* at 446-47 (observing that appellants' arguments "will not evade review because the request for a permanent injunction remains pending and can be reviewed on appeal … from a final judgment"); *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 770 (8th Cir. 2014) (similar, in appeal from denial of preliminary injunction). Plaintiffs here have also sought declaratory and permanent injunctive relief, *see* App. Vol. 1 at 26-27; App. Vol. 2 at 22-23; App. Vol. 3 at 14-15, so if this Court decides they have standing (*but see infra* Part II), the issues they raise will not evade review. Further, the prudential considerations raised in *California* and *Florida*—comity and inter-circuit percolation—do not apply here, given that these appeals and the appeal in *Springer v. Lujan Grisham*, Nos. 23-2192 & 23-2194, are both before this Circuit.[2]

In sum, while there are arguments on both sides, the better argument is that the portion of these appeals challenging the denial of a preliminary injunction against the Parks Restriction is moot and not subject to any mootness exception.

## II. **Plaintiffs lack standing because, regardless of the outcome of this suit, separate, unchallenged restrictions will continue to prohibit Plaintiffs from carrying firearms in parks and playgrounds in Albuquerque and Bernalillo County**

Plaintiffs are prohibited from carrying firearms in the parks that their pleadings and declarations identify as places they seek to carry not only by the Order they challenged, but

---

[2] Due to the significant overlapping issues in these appeals and in *Springer*, defendants respectfully submit that the Court should hear the appeals together or formally consolidate them. This approach would be consistent with the Seventh Circuit's approach in appeals challenging Illinois' law prohibiting assault weapons and large-capacity magazines, in which several district courts had denied motions for preliminary injunctions, but one district court had granted a preliminary injunction. *See* Order, *Bevis v. City of Naperville*, No. 23-1353 (7th Cir. May 12, 2023), ECF No. 91.

also by separate restrictions they chose not to challenge. (Plaintiffs do not identify *any* specific playgrounds where they seek to carry, but separate restrictions prohibit firearms there, too.) Because any relief they might obtain in this suit would not affect those separate restrictions, Plaintiffs have not made the "clear showing" that they are "likely" to establish the redressability element of standing. *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024).

Specifically, an Albuquerque ordinance prohibits "carry[ing], possess[ing], or discharg[ing] any firearm … on Open Space Lands." Albuquerque Code of Ords. § 5-8-6(G) ("Albuquerque Ordinance") (attached as Ex. 1). Additionally, Albuquerque clarifies that a state firearms regulation, N.M. Stat. Ann. § 30-7-2.1, prohibits firearms in, among other places, "City neighborhood parks, which are used as playing areas for public schools and other public school programming." Administrative Instruction No. 5-20, § 1(B)(2) ("Instruction 5-20") (attached as Ex. 2).[3] A Bernalillo County ordinance prohibits "possess[ing] … any firearm or weapon … in any park and recreation facility, except … as otherwise authorized in accordance with county, state or federal laws." Bernalillo Cnty. Ord. § 58-12(b)(27); *see also id.* § 58-5 (defining "[p]arks and recreation facility" to include, among others, "all parks [and] playgrounds … managed by the parks and recreation department"); *id.* § 58-57(b)(27) (similar prohibition, in any County "open space") (together with § 58-12(b)(27), "County Ordinances") (attached as Ex. 3).

Plaintiffs' decision not to challenge any of the independent restrictions on firearms in the parks in which they say they intend to carry deprives them of standing. To satisfy

---

[3] Instruction 5-20 is "not applicable to" the "BMX Complex," the "Esperanza Bike Shop," or to "Open Space." *Id.*, § 1(B).

Article III's requirements, a plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 144 S. Ct. at 1986 (citation omitted). To establish redressability, a plaintiff must "establish that 'any relief [a federal court] could have provided in this suit …' would 'likely' redress her alleged injury." *Valdez v. Lujan Grisham*, No. 22-2112, 2024 WL 2319752, at *4 (10th Cir. May 22, 2024) ("*Valdez II*") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 (1992)). "A showing that the relief requested *might* redress the plaintiff's injuries is generally insufficient[.]" *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012). Consequently, plaintiffs typically lack standing when multiple laws cause them the same harm but they challenge only one of those laws. *See Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014) ("Courts have concluded that plaintiffs fail to establish redressability only when an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision."); *see also Renne v. Geary*, 501 U.S. 312, 318-19 (1991) (expressing "serious" doubt about redressability of injury caused by California constitutional provision given existence of similar, unchallenged state statute). In those circumstances, invalidating the challenged law alone "would do nothing to help [plaintiffs'] plight"—they remain injured by the unchallenged law. *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018). "[T]hat inability to provide meaningful relief deprives th[e] Court of jurisdiction[.]" *Valdez II*, 2024 WL 2319752, at *5.

For these reasons, the Tenth Circuit recently dismissed two challenges to a state-issued vaccine requirement in well-reasoned (albeit unpublished) opinions. *See Valdez v.*

*Lujan Grisham*, No. 21-2105, 2022 WL 2129071, at *2-3 (10th Cir. June 14, 2022) ("*Valdez I*"); *Valdez II*, 2024 WL 2319752 at *2-5. In both, the existence of overlapping mandates issued by the federal government and plaintiff's employer were fatal to plaintiff's standing to challenge the state rule. This Court explained: "If we were to grant a preliminary injunction against the [state vaccine mandate] today, [plaintiff] would still be required to be vaccinated … because of [her employer's] own requirement and the [federal rule]. Thus, the injury … is not redressable by enjoining the [state mandate]." *Valdez I*, 2022 WL 2129071, at *2; *see also Valdez II*, 2024 WL 2319752, at *5.

Although not precedential, *Valdez I* and *Valdez II* are persuasive and should provide the rule of decision here. Their logic is sound, and they are consistent with the approach in other circuits. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (dismissing challenge to federal prohibition on cockfighting because separate, state-level prohibitions on cockfighting "would remain in place notwithstanding any action we might take in regard to the [federal law]"); *Kaspersky Lab*, 909 F.3d at 465 (dismissing challenge to agency directive prohibiting federal agencies from using plaintiff's cybersecurity products because federal statute imposed a broader prohibition); *Exotic Animal Owners v. New York*, 98 F. App'x 905, 907 (2d Cir. 2004) (summary order) (dismissing monkey owner's challenge to New York State reporting requirements for owners of wild animals because New York City separately banned the possession of such animals); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.5 (3d ed. 2008 & Supp. 2024).

Plaintiffs' failure to challenge the Albuquerque and Bernalillo County ordinances defeats the redressability prong of standing because even if they established that the Order

is unconstitutional, those other laws would still preclude the conduct they wish to engage in. Each of the parks that Plaintiffs say they intend to visit are subject to these independent firearms prohibitions. Plaintiff Donk states that he "utilize[s] City of Albuquerque Open Space areas several times a year." App. Vol. 2 at 46. Similarly, Plaintiff Smith states that he "engages in recreation on a weekly basis at New Mexico public parks—primarily Los Poblanos Open Space in Albuquerque, New Mexico." App. Vol. 1 at 22; *see also id*. at 78, 136. The Albuquerque Ordinance prohibits carrying firearms on all City Open Space Lands, including the Los Poblanos Open Space. *See* Albuquerque Code of Ords. § 5-8-6(G). Plaintiff Fort states that if not for the Order he "would carry at Little Cloud Park" in Bernalillo County. App. Vol. 3 at 32. The County Ordinances prohibit carrying firearms in Bernalillo County parks and playgrounds, *see* Bernalillo Cnty. Ord. § 58-12(b)(27), which include Little Cloud Park. Plaintiffs do not identify any other parks or playgrounds they intend to visit that are covered by the Order.[4] Because injunctive relief in this case would not alter their ability to lawfully carry firearms in the parks they identify, Plaintiffs have

---

[4] Plaintiff Donk states that he "frequently visit[s] public parks [and] playgrounds" including to "walk [his] dog into and through public parks," App. Vol. 2 at 46, but he does not name those parks (and, indeed, does not even specify that he is referring to parks in Albuquerque and Bernalillo County). That makes it impossible to assess whether he intends to visit parks covered by the other firearms prohibitions, and thus those statements are inadequate to carry Plaintiffs' burden to establish standing. *See Am. Forest & Paper Ass'n v. U.S. EPA*, 154 F.3d 1155, 1158-59 (10th Cir. 1998). The same is true of Plaintiff Smith's statement that he "occasionally visit[s] playgrounds with [his] grandchildren," without specifying which playgrounds. App. Vol. 1 at 136. Plaintiff Donk also states that he "intend[s] to visit the Esperanza Bike Shop and BMX Complex" and "use[s] Shooting Range Park at least a few times a month," App. Vol. 2 at 46, but the Order does not apply to the Esperanza Bike Shop or the BMX Complex, and it expressly excludes Shooting Range Park. App. Vol. 1 at 164.

failed in their "responsibility … clearly to allege facts demonstrating that [they] [are] proper part[ies] to invoke judicial resolution of the dispute." *Am. Forest & Paper Ass'n*, 154 F.3d at 1159 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To be sure, *Valdez II* noted that standing may exist where court-ordered relief will "significantly increase the chances of favorable action by a non-party" that would remove the independent barrier to relief. 2024 WL 2319752, at *5 (quoting *US Magnesium, LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1166 (10th Cir. 2012)). But it found that exception inapplicable based on the plaintiff's failure to "demonstrate how anything [the Court could] do" would affect the overlapping federal and private vaccine requirements. *Id*. Thus, *Valdez II* was unlike *US Magnesium*, which concluded that relief directed at the EPA "would significantly affect" non-party Utah's decision whether to revise an air-quality rule because of specific evidence in the record: a declaration from a Utah official, coupled with Utah's "stated opposition" to the EPA's action. *See* 690 F.3d at 1166-67. Here, like in *Valdez II*, Plaintiffs have made no such showing, and Defendants have not located any case in which this Court applied this exception in the context of overlapping laws.[5]

---

[5] Plaintiffs might try to rely on *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), which reached the merits of a Second Amendment challenge to a federal prohibition on machineguns despite the existence of a separate but similar Texas law, saying that the "fates" of federal and state law were "intertwined." *Id.* at 441-42. Even if it were timely for Plaintiffs to invoke *Hollis*, it does not justify an exception to normal standing principles here. *First*, *Hollis* observed that a ruling in the plaintiff's favor "would likely put him in compliance under Texas law, erasing it as a separate bar," because he would likely receive the federal machinegun registration that Texas required for possession to be lawful. *See id.* at 442. No similarly immediate connection between the Order and local laws exists here. *Second*, *Hollis* stands in tension with another Fifth Circuit decision, which held that plaintiffs had standing to challenge one charitable-solicitation law but not another, even though they were "seemingly identical in all material respects and that, should the former fall as

In short, Plaintiffs lack standing because "what [they] want[], [the Court] cannot give." *Valdez II*, 2024 WL 2319752, at *5. This Court should affirm the denial of a preliminary injunction and direct the district court to dismiss this suit for lack of standing. *See Utah v. Babbitt*, 137 F.3d 1193, 1197 (10th Cir. 1998) (vacating preliminary injunction and remanding with instruction to dismiss claims for which plaintiffs lacked standing).[6]

## III. The Governor's authority to regulate firearms through executive orders is not at issue in these appeals

The Governor's authority to regulate firearm carry through monthly executive orders is not at issue in these appeals, for three reasons. *First*, Plaintiffs failed to raise this issue in their complaints or requests for preliminary injunctions. *See* App. Vol. 1 at 16-27,

---

unconstitutional, a subsequent challenge to the latter will almost certainly succeed," because "the seemingly intertwined fates of the two provisions does not eviscerate Article III's requirements. Standing is not dispensed in gross." *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (cleaned up). *Third*, an "intertwined" "fates" approach would invite courts to predict the outcome of hypothetical lawsuits without the benefit of a factual record or briefing from the parties responsible for enforcing the unchallenged laws—in derogation of the very point of standing, which is to ensure that the federal courts are deciding actual cases or controversies. For these reasons, *Valdez I* and *II* were correct not to ask whether the "fates" of the challenged state law was "intertwined" with those of the federal and private restrictions before rejecting plaintiff's argument that relief from the state mandate would "likely" redress her injuries, *see Valdez II*, 2024 WL 2319752, at *5, and this Court should do the same.

[6] *Springer* suffers from the same jurisdictional defect. Springer did not name a single park he intends to visit, saying only that he was prohibited from lawfully carrying "at the parks that [he] attend[ed] for non-scholastic youth sporting events" and "in Albuquerque during the balloon fiesta." App. at 55, *Springer v. Lujan Grisham*, Nos. 23-2192 & 23-2194 (10th Cir. Mar. 14, 2024), Doc. 010111016408. These broad allegations are too vague to support standing. *See supra* pp. 8-9 & n.4; *see also* Appellants' Br. 44-45 n.33, *Springer*, Doc. 010111016400 (explaining that Springer lacks standing for the separate reason that he failed to allege ongoing or future injury). Even were the Court to infer that Springer intends to carry in Balloon Fiesta Park, his alleged injury would not be redressable because Instruction 5-20 explicitly clarifies that firearms are prohibited in Balloon Fiesta Park, and Springer did not challenge that restriction. *See* Instruction 5-20, § 1(B)(5).

76-97, 138-160; App. Vol. 2 at 8-48; App. Vol. 3 at 7-32. Accordingly, the issue was not preserved, and this Court should not address it for the first time on appeal. *See Simpson v. Carpenter*, 912 F.3d 542, 565 (10th Cir. 2018) ("[W]hen a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." (citation omitted)); *see also Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1194 (10th Cir. 2020) (explaining that "an issue must be presented to, considered and decided by the trial court before it can be raised on appeal" (cleaned up)). Moreover, Plaintiffs have further waived the argument by failing to brief it on appeal, meaning they cannot now advance it even if they could establish plain error. *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019); *see also McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (explaining that, even if a party's argument were "merely forfeited before the *district* court," failure to establish in opening appellate brief "how they survive the plain error standard waives the arguments in *this* court").

*Second*, even if this issue were reviewable on appeal, "the Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating *state* law." *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995). Thus, Plaintiffs cannot obtain a preliminary injunction barring implementation of the Order on the basis that the Governor lacked authority to issue or extend it under state law. Likewise, this Court has no basis to reverse the denial of a preliminary injunction for a purported failure to comply with state law.

*Lastly*, the New Mexico Supreme Court has already determined that the Governor may declare a public health emergency pursuant to her authority under the Public Health Emergency Response Act, N.M. Stat. Ann. §§ 12-10A-1 to -19, authorize the Secretary of

11

the New Mexico Department of Health to issue emergency orders, and renew the declaration of emergency as needed.[7] Because those state-law determinations control, *see, e.g.*, *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017), Plaintiffs have little room to challenge the Governor's actions, particularly under a plain-error standard.[8]

## CONCLUSION

Because Plaintiffs lack standing, this Court should affirm the denial of a preliminary injunction and direct the district court to dismiss these suits. If instead the Court concludes that Plaintiffs have standing, it should dismiss their appeals as to the Parks Restriction as moot. Defendants also submit that this Court should hear these appeals alongside *Springer*, vacate the preliminary injunction in that case, and direct the district court to dismiss that suit for lack of standing as well.

---

[7] *See Lujan Grisham v. Reeb*, 2021-NMSC-006, ¶ 30, 480 P.3d 852 (2020) (holding that the Secretary of the New Mexico Department of Health could issue public health orders restricting business operations as authorized by the Governor's declaration of a public health emergency); *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 35, 483 P.3d 545 (2021) (reaffirming *Reeb* when public health emergency had lasted over ten months at the time).

[8] The precise question of whether the Governor may declare gun violence a public health emergency and authorize the challenged firearm regulations is currently before the New Mexico Supreme Court. *See Amdor v. Lujan Grisham*, No. S-1-SC-40105 (N.M. Sup. Ct.). The Court heard argument on January 8, 2024, and it is unknown when it will rule. Defendants recognize that, in these circumstances, if the issue of the Governor's authority were properly a part of this case (which it is not), the district court may have thought it appropriate to abstain under *Pullman* rather than reach the federal constitutional questions. *See Caldara v. City of Boulder*, 955 F.3d 1175, 1179 (10th Cir. 2020). If this Court concludes that Plaintiffs and Springer have standing, *but see supra* Part II, and to the extent it may still be inclined to abstain or otherwise stay this appeal pending *Amdor* despite Plaintiffs' waiver, Defendants respectfully submit that it should do so only if it also stays or vacates the preliminary injunction entered in *Springer* and orders the district judge in that case to abstain or stay the case as well. *See id.* at 1182 ("The decision whether to abstain is a 'discretionary exercise of a court's equity powers.'" (citation omitted)); *Nken v. Holder*, 556 U.S. 418, 433 (2009) ("A stay is … an exercise of judicial discretion[.]" (citation omitted)).

August 14, 2024                       Respectfully submitted,

                                      /s/ Janet Carter
                                      Janet Carter
                                      William J. Taylor, Jr.
                                      Carina Bentata Gryting
                                      Everytown Law
                                      450 Lexington Ave, P.O. Box 4184
                                      New York, NY 10163
                                      (646) 324-8174
                                      jcarter@everytown.org

                                      Freya Jamison
                                      Everytown Law
                                      P.O. Box 14780
                                      Washington, DC 20044

                                      Holly Agajanian
                                      *Chief General Counsel to Gov. Lujan Grisham*
                                      Kyle P. Duffy
                                      *Deputy General Counsel to Gov. Lujan Grisham*
                                      490 Old Santa Fe Trail, Suite 400
                                      Santa Fe, NM 87501

                                      Cody Rogers
                                      Serpe Andrews
                                      2540 El Paseo Road, Suite D
                                      Las Cruces, NM 88001

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT AND
TYPEFACE REQUIREMENT**

This supplemental brief complies with the type-volume limit and typeface

requirement specified in this Court's order of July 24, 2024, because the body of the brief

is 12 pages long and the brief was prepared in 13-point Baskerville font.

Respectfully submitted,

/s/ Janet Carter
Janet Carter

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2024, I filed the foregoing via the CM/ECF

filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

/s/ Janet Carter
Janet Carter

# EXHIBIT 1

## § 5-8-6 PROHIBITED ACTIVITIES.

The following activities are prohibited in any Open Space Lands or Regional Preserves:

(A)  *Criminal Trespass.* Criminal trespass consists of unlawfully entering or remaining upon the land or property of another, knowing that any consent to enter or remain has been denied or withdrawn by the person or persons lawfully in possession of the premises or after the request or demand to leave the premises by the authorized representative of the person or persons lawfully in possession of the premises.

(B)  *Negligent Use of Weapons.* Negligent use of weapons consists of:

(1)  Discharging a weapon within the city limits without legal justification; or

(2)  Endangering the safety of another or his property by handling or using a firearm or other deadly weapon in a negligent manner.

(C)  *Criminal Damage to Public Property.* Criminal damage to public property consists of intentionally damaging to a value of less than $1,000 any real or personal property of the city, county, state or United States government without the consent of the owner thereof.

(D)  *Operation of Motorcycles, Motorscooters, and Recreational Vehicles in Certain Areas off the Public Way.* No person shall ride or operate any motorcycle, motorscooter, off-road vehicle or recreational vehicle on any private property or public property within one-quarter of a mile of any school, hospital, convalescent home or residence, except on a public way or parking lot, or on a private road or driveway.

(E)  *Removal of Natural Resources.* No person shall dig or remove any soil, sand, gravel, rock, scoria, shrubs, trees, cacti, or other plants from Open Space Lands or Regional Preserves.

(F)  *Wildlife.* No person shall harm, hunt, pursue, molest, harass, trap, collect, or remove any mammal, bird, reptile, or amphibian animals or eggs or young of said animals on/from Open Space Lands or Regional Preserves.

(G)  *Weapons and Firearms.* No person shall carry, possess, or discharge any firearm, bow, crossbow, blowgun, or spring-driven, compressed air or $CO_2$ powered rifle or pistol on Open Space Lands or Regional Preserves.

(H)  *Dumping of Waste, Refuse, Trash, Oil.* No person shall dump, deposit, dispose, throw out, or leave behind any solid waste, plant waste or trimmings, oil or grease, or any other form of rubbish or waste on Open Space Lands or Regional Preserves in other than receptacles designated for that purpose.

(I)  *Vandalism, Protection of Ethno-Historical Resources.* No person shall mark or deface in any way any rock, wall, surface, petroglyph or sign on any Open Space Lands or Regional Preserve, nor shall they remove or disturb any archaeological site or artifact.

(J)  *Alcoholic Beverages.* Drinking or consuming of alcoholic beverages on Open Space Lands or Regional Preserves shall be considered "Drinking in Public" and is hereby prohibited.

(K)  *Fires.* No person shall smoke or attempt to smoke or build or attempt to build a fire on Open Space Lands or Regional Preserves, except as provided in Section 5-8-7(B)(6) of the Albuquerque Open Space Ordinance.

(L)  *Camping.* No person shall camp, except as provided in § 5-8-7.

('74 Code, § 5-6-6) (Ord. 23-1980; Am. Ord. 35-1987; Am. Ord. 63-2005)

# EXHIBIT 2

**AI NO:   5-20**

## NOTING THE APPLICABILITY OF STATE LAW TO CONDITIONS TO ENTRY TO CITY OF ALBUQUERQUE PARKS AND OTHER FACILITIES (8/31/2020)

**ADMINISTRATIVE INSTRUCTION NO:**  5-20

**TITLE:** Noting the Applicability of State Law to Conditions to Entry to City of Albuquerque Parks and Other Facilities

**PRIMARY DEPARTMENTS:** Parks and Recreation Department, Department of Family and Community Services, Department of Senior Affairs

**Secondary Departments:** Albuquerque Police Department, Department of Municipal Development, Legal Department, Albuquerque Fire Rescue

As set forth in Administrative Instruction No. 8-5 ("AI 8-5"), it is the policy of the City of Albuquerque to ensure that safe and healthful working conditions exist for its employees, contractors, and the general public whose work involves the conducting of business in city-owned buildings, on city-owned properties or in the course of normal business. Administrative Instruction No. 5-19 ("AI 5-19") provided guidance on the policy set forth under AI 8-5 to City community centers, health and social service centers, multigenerational centers, and senior centers under applicable State laws. In addition, both AI 8-5 and 5-19 indicated that the City may have liability under the Tort Claims Act for negligence in the operation of its facilities and provides the need to ensure laws are observed and enforced.

This Administrative Instruction shall:

(1)   Ensure enforcement of the State's prohibition of carrying deadly weapons, including firearms, at City property or facilities that are used for school or college related and sanctioned activities pursuant to NMSA 1978 § 30-7-2.1 and § 30-7-2.4. This includes enforcement at certain City property or facilities used for such activities but not encompassed in AI 5-19; and

(2)   Ensure that conditions of entry to City parks and recreations centers, established by the City herein, are enforced under New Mexico's criminal trespass law, NMSA 1978 § 30-14-1(C) NMSA 1978, including a prohibition of carrying deadly weapons at certain City property or facilities.

**1. Prohibition of carrying deadly weapons, including firearms, at city property and facilities used for school or college related and sanctioned activities**

**A. The prohibition on deadly weapons and firearms in schools**

NMSA 1978, § 30-7-2.1(A) makes it unlawful to carry a deadly weapon on "school premises," except by "(1) a peace officer; (2) school security personnel; (3) a student, instructor or other school-authorized personnel engaged in army, navy, marine corps or air force reserve officer training corps programs or state-authorized hunter safety training instruction; (4) a person conducting or participating in a school-approved program, class or other activity involving the carrying of a deadly weapon; or (5) a person older than nineteen years of age on school premises in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property." Those who commit unlawful carrying of a deadly weapon on school premises may be charged with a fourth degree felony under NMSA 1978, § 30-7-2.1(C).

NMSA 1978, § 30-1-12 defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted."

**B. Applicability of NMSA 1978, § 30-7-2.1 to City property and facilities**

The state laws cited above are clear and unambiguous. The State legislature could have narrowly defined "public school premises" and "university premises" to mean only those properties owned or leased by public schools or universities. Instead, the Legislature chose expressly to include buildings and areas "that are not public school property" and "that are not university property."

In addition to the buildings and grounds that house public schools, NMSA 1978, § 30-7-2.1(B)(2) defines "public school premises" as "any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed."

Under this definition, the statute's prohibition, including the exception for law enforcement officers, applies to:

(1)   City property or facilities expressly covered by AI 5-19;

(2)   City neighborhood parks, which are used as playing areas for public schools and other public school programming, including those used for the Food Services Program for Children in partnership with Albuquerque Public Schools;

(3)   City sports fields, including the Albuquerque Regional Sports Complex, and City golf courses, which are used for public school and university sports or physical education classes, but not including facilities at Shooting Range Park;

(4)   City pools, including the surrounding parking lots, which are used for school activities;

(5)    Balloon Fiesta Park, which is used for school activities;

(6)    The Albuquerque Convention Center, which is used for public school graduations and other school activities;

(7)    Civic Plaza, which educators and students from Amy Biehl Charter High School regularly use for physical education activities and in which playground equipment is located.

Exceptions: This AI is not applicable to the at Shooting Range Park, the Esperanza Bike Shop, the BMX Complex, Open Space or other Parks and Recreation Department maintenance yards or administrative business offices.

## 2. Criminal trespass and the prohibition of deadly weapons on government property

### A. Criminal trespass

New Mexico's criminal trespass statute regarding government property may be used to disallow the carrying of firearms, according to an Attorney General Advisory Letter dated September 8, 2011. Under NMSA 1978, § 30-14-1(C), "Criminal trespass also consists of knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof." As noted by the 2011 Attorney General letter, this statute authorizes a political subdivision to consent to entry by others to its property, establish reasonable conditions to consenting to entry, and enforce such conditions. Such conditions may include banning dangerous weapons, including firearms, if the government "reasonably conclude[s] that adequate and proper security requires imposing such a condition as a requirement for members of the public generally to access the" property.

If members of the public are properly advised of a condition, including the prohibition of carrying deadly weapons, to gain entrance to a public facility, the trespass statute can be used for enforcement purposes. The facility at issue in the Attorney General letter was a district attorney's office, which counties are required to provide. The letter stated the same condition could be imposed by either the district attorney's office or the county, depending on which was the "custodian" of the property for purposes of Section 30-14-1(C). However, this analysis did not turn on whether a state agency or local government established the condition.

Provided this authority, the City of Albuquerque shall enforce this state law by ensuring adequate and proper security, including a prohibition on the carrying of deadly weapons, with the exception of law enforcement officers, property and facilities identified herein.

### B. Prohibiting possession of deadly weapons at certain City property and facilities

Pursuant to the City of Albuquerque's authority to impose and enforce conditions to entry to its property under New Mexico's criminal trespass statute as interpreted by the Attorney General letter dated September 8, 2011, possession of deadly weapons at the following City property and facilities is prohibited, with the exception of law enforcement officers, to ensure adequate and proper security for City personnel and members of the public:

(1)    Any City property and facilities utilized for school sanctioned activity;

(2)    City parks or facilities listed in Section 1(B)(1) - (7),.

Notice shall be posted regarding this Administrative Instruction and the enforcement of NMSA 1978, § 30-7-2.1(A) and § 30-14-1(C) at each property or facility in which this Administrative Instruction applies.

Preemption pursuant to Article II, §6 of the Constitution of New Mexico is not applicable because the right to keep and bear arms does not encompass carrying deadly weapons, including firearms, under the circumstances and at the public places set forth herein.

## 3. Prohibition of deadly weapons, including firearms, in sensitive places

### A. Sensitive places

Albuquerque saw the risk of firearms at parks on June 15, 2020. After armed counter-demonstrators confronted protestors near Tiguex Park in Old Town, tensions escalated leading to physical altercations and an armed counter-demonstrator shot a protestor four times. With the Albuquerque Police Department recovering a large number of firearms and ammunition, that incident had the potential to be much more violent it was. The City of Albuquerque has the police power to protect its inhabitants and preserve peace and order under NMSA 1978, § 3-18-1, and desires to exercise this authority to prevent future incidents like the shooting on June 15, 2020.

In declaring the Second Amendment's individual right to bear arms in District of Columbia v. Heller, the United States Supreme Court recognized the legitimacy of prohibitions on carrying firearms in "sensitive places." D.C. v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817, 171 L. Ed. 2d 637 (2008). The Court noted schools and government buildings as obvious such places, but declined to provide an exhaustive list. Courts have since found public parks to be sensitive places. Particularly, some jurisdictions have held there is no logical distinction between schools and parks where children recreate. Warden v. Nickels, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010).

In denying a challenge to a statewide ban on firearms in parks, an Illinois' court not only found there was a compelling argument that public parks were "sensitive places" but that the ban also withstood intermediate scrutiny under the Second Amendment. People v. Bell, 2018 IL App (1st) 153373. The law was a justified restriction to protect the police and public from dangerous weapons because large numbers of people congregate in parks for recreation.

### B. Prohibition of deadly weapons, including firearms, at certain City property or facilities deemed sensitive places

In accordance with established law, in order to protect citizens exercising their First Amendment rights as well as protecting children who often congregate in public parks, recreational facilities, and plazas under a variety of circumstances, such City owned property and facilities are "sensitive places." Possession of deadly weapons is prohibited at the following "sensitive places," with the exception of law enforcement officers, to ensure adequate and proper security for City personnel and members of the public:

    (1)   Any City property utilized for school sanctioned activity;

    (2)   City parks and recreation facilities listed in Section 1(B)(1)-(7)..

Notice shall be posted regarding this Administrative Instruction and the enforcement of NMSA 1978, § 30-18-1 at each property or facility in which this Administrative Instruction applies.

Preemption pursuant to Article II, § 6 of the Constitution of New Mexico is not applicable because state law already addresses carrying deadly weapons, including firearms, under the circumstances and at the public places set forth herein and this Instruction merely clarifies the applicability of those state laws.

### 4. Severability

If any section, subsection, sentence, clause, word, or phrase of this Administrative Instruction is for any reason held to be unconstitutional or otherwise invalid by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Administrative Instruction.

| | |
|---|---|
| _____<br>Sarita Nair<br>Chief Administrative Officer<br><br>_____<br>Effective Date | _____<br>Sarita Nair<br>Chief Administrative Officer<br><br>8/31/20<br>_____<br>Effective Date |

[AI NO: 5-20 (pdf)](AI NO: 5-20 (pdf))

# EXHIBIT 3

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 29

Sec. 58-12. - Penalty and prohibited conduct.

(a) *Penalty.* Except as otherwise provided in this article, any violation of the provisions of section 58-12 is punishable in accordance with section 1-6.

(b) *Prohibited conduct.*

(1) *Unlawful entry.* No person shall enter into, remain in or leave any vehicle unattended in any park and recreation facility or portion thereof when the park and recreation facility or portion thereof is closed to the public.

(2) *Failure to pay fee.* No person shall enter into or remain in any park and recreation facility or participate in any program sponsored by the parks and recreation department for which admission or a fee is required, without having paid that admission or fee.

(3) *Interfering with employee.* No person shall interfere or attempt to interfere with any employee or elected official of Bernalillo County, emergency responder, law enforcement officer or animal control officer acting within the scope of their authorized duties, or give false or misleading information with the intent to mislead such person in the performance of his or her authorized duties in any park and recreation facility.

(4) *Disruption of authorized activity.* No person shall knowingly disrupt any authorized activity conducted in any park and recreation facility.

(5) *Permits.*

a. No person shall engage in any activity in any park and recreation facility for which a permit is required under section 58-10, unless a permit has been issued for the activity.

b. No person, having been issued a permit under section 58-10, shall fail to produce and exhibit the permit during the permitted activity upon the request of the county manager, any parks and recreation department employee or any law enforcement officer.

c. No person, having been issued a permit under section 58-10, shall fail to comply with the conditions of the permit.

(6) *Sale of goods or services.*

a. No person shall sell, solicit, peddle or hawk any good, service, food or beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

b. No person shall station or place any stand, cart or vehicle for the display or sale of any good, service, food or beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(7) *Advertising.*

a.

Appellate Case: 23-2166      Document: 010111094986      Date Filed: 08/14/2024      Page: 30

No person in any park and recreation facility shall announce or call attention to any event or good, service, food or beverage for sale, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    b. No person in any park and recreation facility shall distribute any flyer, handbill, circular, pamphlet or other advertisement or notice, or place such on any vehicle, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    c. No person shall paste, glue, tack, post or erect any sign, advertisement or notice in any park and recreation facility or along any street adjacent to any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(8) *Alcohol.* No person shall possess, consume or sell any alcoholic beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County, and, if necessary, a special dispenser's permit or public celebration permit issued by the State of New Mexico, Regulation and Licensing Department, Alcohol and Gaming Division.

(9) *Glass.*

    a. No person shall possess any glass, ceramic or other breakable material in any park and recreation facility outside of any vehicle, except for materials authorized by the county manager.

    b. No person shall knowingly or recklessly throw, propel or break any glass, ceramic or other breakable material in any park and recreation facility.

(10) *Domestic animals.*

    a. No person shall allow any animal under his or her ownership or control to enter into or remain in any park and recreation facility or portion thereof designated as closed to animals by the county manager.

    b. In accordance with sections 6-45 and 6-53, no person shall allow any animal under his or her ownership or control to run at large in any park and recreation facility. All animals shall be restrained on a secure leash that does not exceed or is retractable to six feet in length; provided, however, that the county manager may designate off leash areas and policies and procedures governing such areas.

    c. In accordance with section 6-56, no person shall allow any animal under his or her ownership or control to defecate in any park and recreation facility, except if such animal waste is immediately removed and properly disposed of by the person having ownership or control of the animal.

    d.

No person shall allow any animal under his or her ownership or control to play, swim, bathe, wade, urinate or defecate in any pool, fountain or body of water in any park and recreation facility.

    e. No person shall allow any horse or any animal capable of being ridden by a person under his or her ownership or control to enter into or remain in any park and recreation facility, except in such park and recreation facilities that the county manager may designate for use by such animals.

    f. No person shall hitch any horse or animal capable of being ridden under his or her ownership or control in any manner which damages vegetation or structures, or which interferes with or disturbs the public's use of any park and recreation facility.

    g. No person shall allow any cattle or livestock under his or her ownership or control to enter into or remain in any park and recreation facility.

    h. No person shall relocate, release or leave unattended any animal in any park and recreation facility.

    i. No person shall allow any animal under his or her ownership or control to pursue, harass, injure or kill any wild or domestic animal in any park and recreation facility.

    j. No person shall allow any animal under his or her ownership or control to damage or destroy any property in any park and recreation facility. In addition to the penalty prescribed in section 1-6, any person so allowing any animal under his or her ownership or control to damage or destroy property shall be liable for the full amount of the damage.

    k. The prohibitions of subsections (b)(10)a.—j. shall not apply to service animals in the performance of qualifying services or to animals in the performance of official law enforcement or rescue activities.

(11) *Wildlife habitat.* No person or animal under his or her control shall remove disturb, damage or destroy any wildlife habitat features, including, but not limited to, animal dens, burrows, dwellings or nests in any park and recreation facility.

(12) *Introduction of organisms.* No person shall introduce or cause to be introduced any organism, living or dead, including, but not limited to, non-native plants, animals, fish or insects in any park and recreation facility.

(13) *Hunting and trapping.* No person shall hunt, trap, pursue, harass, injure, collect or remove any mammal, bird, reptile, amphibian or the eggs or young of such animals in any park and recreation facility.

(14) *Feeding.* No person shall feed or attempt to feed any animal any noxious substance, including, but not limited to, tobacco or alcohol in any park and recreation facility.

(15)

Appellate Case: 23-2166     Document: 010111094986     Date Filed: 08/14/2024     Page: 32

*Fishing.* No person shall fish for, net, spear or catch any fish in any body of water in any park and recreation facility, except where designated by the county manager and in compliance with the licensing requirements of the State of New Mexico Department of Game and Fish.

(16)   *Boating.* No person shall sail, row, propel, float upon or use any boat, raft, floatation device or other vessel on any body of water in any park and recreation facility, except where designated by the county manager.

(17)   *Swimming.* No person shall swim, wade or bathe in any body of water in any park and recreation facility, except where designated by the county manager.

(18)   *Fountains.* No person shall stand, walk or climb upon, or swim, wade or bathe in any fountain in any park and recreation facility, except where designated by the county manager.

(19)   *Climbing on features.* No person shall climb any tree or stand, sit or walk upon any monument, railing, fence or similar features in any park and recreation facility.

(20)   *Urination/defecation.* No person shall urinate or defecate in any park and recreation facility, except in plumbing fixtures or chemical toilets specifically provided for those purposes.

(21)   *Unauthorized construction.* No person shall clear ground or excavate for, construct, install, improve on or maintain any permanent or temporary structure, utility, fence, gate, road, trail or similar features in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(22)   *Litter.* No person shall leave or deposit any rubbish, debris, waste or other material in any park and recreation facility, except that which is generated by legal activities in a park and recreation facility and deposited in a designated receptacle. Where receptacles are not provided or are full, all such material shall be carried out of the park and recreation facility by the person responsible for its presence and properly disposed of elsewhere.

(23)   *Pollution of waters.* No person shall deposit or discharge in the waters of any pool, fountain or other body of water in any park and recreation facility any rubbish, debris, waste or other material that may pollute or contaminate such waters.

(24)   *Damage to natural resources.* No person shall collect, remove, disturb, deface, graffiti, damage or destroy any natural resource, including, but not limited to, all live and dead vegetation and all parts thereof; landscaping materials; soil, rocks or any other earthen material; minerals or other articles or artifacts of geological interest or value in any park and recreation facility.

(25)   *Damage to archaeological, paleontological and historical resources.* No person shall remove, collect, disturb, deface, graffiti, damage or destroy any object of archaeological, paleontological or historical interest or value in any park and recreation facility.

(26)

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 33

*Damage to property.* No person shall remove, disturb, deface, graffiti, damage or destroy any property in any park and recreation facility, including, but not limited to, buildings, art, signs, gates, fences, walls, tools, equipment, trash receptacles, benches, paving materials, utility lines and irrigation lines.

(27) *Firearms and weapons.*

    a. No person shall possess, use, discharge or cause to be discharged any firearm or weapon, including, but not limited to, any air or gas weapon, air rifle or pistol, BB gun, pellet gun, potato cannon, blow gun, spring gun, spear gun, paintball gun, air-soft gun, bow and arrow, crossbow, slingshot, stun gun, spear, sword, knife with blade over five inches long or any other form of weapon harmful to human or animal in any park and recreation facility, except for authorized archery activities at the El Refugio Archery Range or as otherwise authorized in accordance with county, state or federal laws.

    b. No person shall discharge or cause to be discharged any firearm or weapon listed in subsection 58-12(b)(27)a. into or across any park and recreation facility from outside the boundary of a park and recreation facility.

(28) *Fireworks and explosives.* No person shall possess, sell, ignite or discharge any firework or explosive device in any park and recreation facility, except as authorized by the county manager.

(29) *Fire.*

    a. No person shall make, light or maintain a fire in any park and recreation facility, except where designated or on a grill, stove or fire ring supplied by the parks and recreation department. All fires shall be built in a safe manner, attended at all times and properly extinguished.

    b. Fires may be prohibited entirely from any park and recreation facility by order of the county commission or county manager.

(30) *Trail use and conduct.* No person shall fail to obey any sign that dictates authorized uses or behavior on any path or trail in any park and recreation facility.

(31) *Human-powered and motorized vehicles and devices.*

    a. No person shall operate any motorized vehicle or device in any park and recreation facility, except on authorized roads, parking lots or other areas designated by the county manager. Motorized wheelchairs, mobility scooters, power chairs and similar electric mobility devices used by persons who need assistance to be mobile are exempt from this prohibition if operated in a safe manner and in accordance with all applicable park and recreation and traffic rules and regulations.

    b. No person shall operate any bicycle, scooter, skateboard, roller skates, rollerblades or any other human-powered vehicle or device on any tennis court, basketball court, running track, artificial sports surface or other sports facility in any park and recreation facility,

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 34

except in areas specifically designated for such uses by the county manager. Child strollers, baby carriages and medical mobility devices used by persons who need assistance to be mobile are exempt from this prohibition.

   c. No person shall ride any skateboard or operate any other human-powered vehicle or device on any picnic table, bench, fountain, planter, fence, railing, sculpture or similar features in any park and recreation facility.

   d. No person shall park any human-powered or motorized vehicle or device in such a manner that creates a hazard to vehicular, pedestrian, bicycle or other traffic in any park and recreation facility.

   e. No person shall clean or maintain any motorized vehicle or device or livestock trailer in any park and recreation facility, except for emergency repairs.

   f. No person shall fail to operate any human-powered or motorized vehicle or device in accordance with all applicable county and state motor vehicle laws in any park and recreation facility.

(32) *Aircraft.* No person shall take off from or land in any park and recreation facility in any motorized or nonmotorized aircraft including, but not limited to, airplanes, helicopters, ultralights, gliders, hang gliders, paragliders or parachutes, except:

   a. Hang gliders and similar unpowered, heavier-than-air, flexible-wing aircraft landing at Big Sky Hang Glider Park;

   b. Aircraft used to transport injured persons, evacuees, medical personnel or public officials in the event of an accident, disaster or emergency;

   c. Aircraft landing in a bona fide emergency;

   d. Where designated by the county manager.

(33) *Model aircraft and watercraft.* No person shall operate any motorized model vehicle, aircraft or watercraft, or ignite or launch any model rocket in any park and recreation facility, except where designated by the county manager.

(34) *Gambling.* No person shall gamble in any park and recreation facility.

(35) *Geocaching.* No person shall place a geocache in any park and recreation facility unless he or she first registers the geocache with the parks and recreation department and places the geocache in accordance with the policies and procedures established by the county manager. The county manager may confiscate any geocache in any park and recreation facility without cause.

(36) *Golfing.* No person shall possess, use or play with golf equipment or golf balls in any park and recreation facility, except where designated by the county manager.

(37)

Appellate Case: 23-2166     Document: 010111094986     Date Filed: 08/14/2024     Page: 35

*Tennis.* No person shall give tennis lessons in any park and recreation facility when such lessons are given for compensation or fees of any sort, except when lessons are offered as part of a recreation program sponsored by the parks and recreation department or expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(38)  *Dangerous projectiles.* No person shall engage in activities that involve thrown or otherwise dangerous propelled objects such as stones, arrows, javelins, discuses or similar objects likely to inflict injury in any park and recreation facility.

(Ord. No. 2010-14, 5-25-10)

Appellate Case: 23-2166     Document: 010111094986     Date Filed: 08/14/2024     Page: 36

Sec. 58-5. - Definitions.

Unless the context requires otherwise, the following definitions shall apply to this article:

*County manager* means the County Manager of Bernalillo County. Wherever this article grants authority to or places responsibility on the county manager, the county manager may delegate his or her authority or responsibility to the director of the parks and recreation department as he or she may deem expedient. The director of the parks and recreation department may delegate his or her authority or responsibility to subordinates as he or she may deem expedient.

*Parks and recreation department* means the parks and recreation department of Bernalillo County.

*Parks and recreation facility* means all parks, playgrounds, athletic courts and fields, trails, bodies of water within a park, pools, fountains, community centers, senior centers, parking lots, drives and all other lands, buildings and facilities so designated as park and recreation facilities by the county manager and managed by the parks and recreation department, excluding open space.

*Sheriff's office* means the Bernalillo County Sheriff's Office.

(Ord. No. 2010-14, 5-25-10)

**Cross reference—** Definitions generally, § 1-2.

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 37

Sec. 58-57. - Penalty and prohibited conduct.

(a) *Penalty.* Except as otherwise provided in this article, any violation of the provisions of [this] section is punishable in accordance with section 1-6.

(b) *Prohibited conduct.*

(1) *Unlawful entry.* No person shall enter into, remain in or leave any vehicle unattended in any open space or portion thereof when the open space or portion thereof is closed to the public.

(2) *Failure to pay fee.* No person shall enter into or remain in any open space or participate in any program sponsored by the parks and recreation department for which admission or a fee is required, without having paid that admission or fee.

(3) *Interfering with employee.* No person shall interfere or attempt to interfere with any employee or elected official of Bernalillo County, emergency responder, law enforcement officer or animal control officer acting within the scope of their authorized duties, or give false or misleading information with the intent to mislead such person in the performance of his or her authorized duties in any open space.

(4) *Disruption of authorized activity.* No person shall knowingly disrupt any authorized activity conducted in any open space.

(5) *Permits.*

a. No person shall engage in any activity in any open space for which a permit is required under section 58-55, unless a permit has been issued for the activity.

b. No person, having been issued a permit under section 58-55, shall fail to produce and exhibit the permit during the permitted activity upon the request of the county manager, any parks and recreation department employee or any law enforcement officer.

c. No person, having been issued a permit under section 58-55, shall fail to comply with the conditions of the permit.

(6) *Sale of goods or services.*

a. No person shall sell, solicit, peddle or hawk any good, service, food or beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

b. No person shall station or place any stand, cart or vehicle for the display or sale of any good, service, food or beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(7) *Advertising.*

a.

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 38

No person in any open space shall announce or call attention to any event or good, service, food or beverage for sale, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    b. No person in any open space shall distribute any flyer, handbill, circular, pamphlet or other advertisement or notice, or place such on any vehicle, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    c. No person shall paste, glue, tack, post or erect any sign, advertisement or notice in any open space or along any street adjacent to any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(8) *Alcohol.* No person shall possess, consume or sell any alcoholic beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County, and, if necessary, a special dispenser's permit or public celebration permit issued by the State of New Mexico, Regulation and Licensing Department, Alcohol and Gaming Division.

(9) *Glass.*

    a. No person shall possess any glass, ceramic or other breakable material in any open space outside of any vehicle, except for materials authorized by the county manager.

    b. No person shall knowingly or recklessly throw, propel or break any glass, ceramic or other breakable material in any open space.

(10) *Domestic animals.*

    a. No person shall allow any animal under his or her ownership or control to enter into or remain in any open space or portion thereof designated as closed to animals by the county manager.

    b. In accordance with sections 6-45 and 6-53, no person shall allow any animal under his or her ownership or control to run at large in any open space. All animals shall be restrained on a secure leash that does not exceed or is retractable to six feet in length.

    c. In accordance with section 6-56, no person shall allow any animal under his or her ownership or control to defecate in any open space, except if such animal waste is immediately removed and properly disposed of by the person having ownership or control of the animal. Under no circumstances shall a person allow any animal under his or her ownership or control to defecate or urinate in any agricultural field, community garden or other place of food production in any open space.

    d. No person shall allow any animal under his or her ownership or control to play, swim, bathe, wade, urinate or defecate in any pool, fountain or body of water in any open space.

   e. No person shall allow any horse or any animal capable of being ridden by a person under his or her ownership or control to enter into or remain in any open space, except in such open space or portion thereof that the county manager may designate for use by such animals.

   f. No person shall hitch any horse or animal capable of being ridden under his or her ownership or control in any manner which damages vegetation or structures, or which interferes with or disturbs the public's use of any open space.

   g. No person shall allow any cattle or livestock under his or her ownership or control to enter into or remain in any open space.

   h. No person shall relocate, release or leave unattended any animal in any open space.

   i. No person shall allow any animal under his or her ownership or control to pursue, harass, injure or kill any wild or domestic animal in any open space.

   j. No person shall allow any animal under his or her ownership or control to damage or destroy any property in any open space. In addition to the penalty prescribed in section 1-6, any person so allowing any animal under his or her ownership or control to damage or destroy property shall be liable for the full amount of the damage.

   k. The prohibitions of subsection (b)(10)a.—j. shall not apply to service animals in the performance of qualifying services or to animals in the performance of official law enforcement or rescue activities.

(11) *Wildlife habitat.* No person or animal under his or her control shall remove disturb, damage or destroy any wildlife habitat features, including, but not limited to, animal dens, burrows, dwellings or nests in any open space.

(12) *Introduction of organisms.* No person shall introduce or cause to be introduced any organism, living or dead, including, but not limited to, non-native plants, animals, fish or insects in any open space.

(13) *Hunting and trapping.* No person shall hunt, trap, pursue, harass, injure, collect or remove any mammal, bird, reptile, amphibian or the eggs or young of such animals in any open space.

(14) *Feeding.* No person shall feed or attempt to feed any wildlife any substance in any open space.

(15) *Fishing.* No person shall fish for, net, spear or catch any fish in any body of water in any open space, except where designated by the county manager and in compliance with the licensing requirements of the State of New Mexico Department of Game and Fish.

(16) *Boating.* No person shall sail, row, propel, float upon or use any boat, raft, floatation device or other vessel on any body of water in any open space, except where designated by the county manager.

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 40

(17) *Swimming.* No person shall swim, wade or bathe in any body of water in any open space, except where designated by the county manager.

(18) *Fountains.* No person shall stand, walk or climb upon, or swim, wade or bathe in any fountain in any open space, except where designated by the county manager.

(19) *Climbing on features.* No person shall climb any tree or stand, sit or walk upon any monument, railing, fence or similar features in any open space.

(20) *Urination/defecation.*

   a. No person shall fail to urinate or defecate in plumbing fixtures or chemical toilets specifically provided for those purposes in any open space where such fixtures are readily available.

   b. No person shall urinate or defecate in public view, defecate within 200 feet of any body of water, or fail to bury human waste in any open space where such activities are authorized by the county manager.

(21) *Unauthorized construction.* No person shall clear ground or excavate for, construct, install, improve on or maintain any permanent or temporary structure, utility, fence, gate, road, trail or similar features in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(22) *Litter.* No person shall leave or deposit any rubbish, debris, waste or other material in any open space, except that which is generated by legal activities in an open space and deposited in a designated receptacle. Where receptacles are not provided or are full, all such material shall be carried out of the open space by the person responsible for its presence and properly disposed of elsewhere.

(23) *Pollution of waters.* No person shall deposit or discharge in the waters of any pool, fountain or other body of water in any open space any rubbish, debris, waste or other material that may pollute or contaminate such waters.

(24) *Damage to natural resources.* No person shall collect, remove, disturb, deface, graffiti, damage or destroy any natural resource, including, but not limited to, all live and dead vegetation and all parts thereof; landscaping materials; soil, rocks or any other earthen material; minerals or other articles or artifacts of geological interest or value in any open space.

(25) *Damage to archaeological, paleontological and historical resources.* No person shall remove, collect, disturb, deface, graffiti, damage or destroy any object of archaeological, paleontological or historical interest or value in any open space.

(26) *Damage to property.* No person shall remove, disturb, deface, graffiti, damage or destroy any property in any open space, including, but not limited to buildings, art, signs, gates, fences, walls, tools, equipment, trash receptacles, benches, paving materials, utility lines and

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 41

irrigation lines.

(27) *Firearms and weapons.*

    a. No person shall possess, use, discharge or cause to be discharged any firearm or weapon, including, but not limited to any air or gas weapon, air rifle or pistol, BB gun, pellet gun, potato cannon, blow gun, spring gun, spear gun, paintball gun, air-soft gun, bow and arrow, crossbow, slingshot, stun gun, spear, sword, knife with blade over five inches long or any other form of weapon harmful to human or animal in any open space, except as otherwise authorized in accordance with county, state or federal laws.

    b. No person shall discharge or cause to be discharged any firearm or weapon listed in subsection (27)a. into or across any open space from outside the boundary of an open space.

(28) *Fireworks and explosives.* No person shall possess, sell, ignite or discharge any firework or explosive device in any open space, except as authorized by the county manager.

(29) *Fire.*

    a. No person shall make, light or maintain a fire in any open space, except where designated or on a grill, stove or fire ring supplied by the parks and recreation department. All fires shall be built in a safe manner, attended at all times and properly extinguished.

    b. Fires may be prohibited entirely from any open space by order of the county commission or county manager.

    c. No person shall collect firewood in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(30) *Trail use and conduct.* No person shall fail to obey any sign that dictates authorized uses or behavior on any path or trail in any open space.

(31) *Human-powered and motorized vehicles and devices.*

    a. No person shall operate any motorized vehicle or device in any open space, except on authorized roads, parking lots or other areas designated by the county manager. Motorized wheelchairs, mobility scooters, power chairs and similar electric mobility devices used by persons who need assistance to be mobile are exempt from this prohibition if operated in a safe manner and in accordance with all applicable open space and traffic rules and regulations.

    b. No person shall operate any bicycle, scooter, skateboard, roller skates, rollerblades or any other human-powered vehicle or device in any open space, except in areas specifically designated for such uses by the county manager. Child strollers, baby carriages and medical mobility devices used by persons who need assistance to be mobile are exempt

Appellate Case: 23-2166    Document: 010111094986    Date Filed: 08/14/2024    Page: 42

from this prohibition.

   c.  No person shall ride any skateboard or operate any other human-powered vehicle or device on any picnic table, bench, fountain, planter, fence, railing, sculpture or similar features in any open space.

   d.  No person shall park any human-powered or motorized vehicle or device in such a manner that creates a hazard to vehicular, pedestrian, bicycle or other traffic in any open space.

   e.  No person shall clean or maintain any motorized vehicle or device or livestock trailer in any open space, except for emergency repairs.

   f.  No person shall fail to operate any human-powered or motorized vehicle in accordance with all applicable county and state motor vehicle laws in any open space.

(32)  *Aircraft.* No person shall take off from or land in any open space in any motorized or nonmotorized aircraft including, but not limited to airplanes, helicopters, ultralights, gliders, hang gliders, paragliders or parachutes, except:

   a.  Aircraft used to transport injured persons, evacuees, medical personnel or public officials in the event of an accident, disaster or emergency;

   b.  Aircraft landing in a bona fide emergency;

   c.  Where designated by the county manager.

(33)  *Model aircraft and watercraft.* No person shall operate any motorized model vehicle, aircraft or watercraft, or ignite or launch any model rocket in any open space.

(34)  *Gambling.* No person shall gamble in any open space.

(35)  *Geocaching.* No person shall place a geocache in any open space unless he or she first registers the geocache with the parks and recreation department and places the geocache in accordance with the policies and procedures established by the county manager. The county manager may confiscate any geocache in any open space without cause.

(36)  *Dangerous projectiles.* No person shall engage in activities that involve thrown or otherwise dangerous propelled objects such as stones, arrows, javelins, discuses or similar objects likely to inflict injury in any open space.

(Ord. No. 2010-11, 5-25-10)